SMITH & WIFE, Respondents, v. SWERINGEN et al., Appellants.

1. A testator died leaving him surviving six children, and four grand-children, the children of two deceased daughters. By his will he made certain specific devises and bequests to his widow and to others and for the payment of debts. To three of his grand-children (daughters of one of said deceased daughters) he made a devise as follows: "I also give and bequeath to my grand-daughters, M. A. B., M. E. B. and F. W.—children of my daughter, F. W. C.—such portion of my landed estate as would have been their mother's had she survived me and I had died intestate, to be

divided equally between them." To the other grand-child he made a devise as follows : " Taking into consideration the present state of the remaining members of my family, I think it but just and equitable that my grand-daughter, M. J. S., shall receive only one-half of such proportion of my landed estate as would have been her mother's, had she survived me and I had died intestate." The testator not having named three of his daughters in his will, he died intestate as to them.

*Held,* that the intestacy alluded to in these devises to his grand-children was not a *total* intestacy ; that the testator had reference therein to that portion only of his estate which was not embraced in the specific devises made by him.

2. A. died possessed of numerous lots and parcels of land ; a partial partition, embracing a portion of said lots, was made, and a lot, that had been sold and conveyed away by A. in his life-time, was assigned to B., one of his representatives. This lot was embraced in the partition, and was assigned by the commissioners to B. by mistake and in ignorance on the part of all the parties to the partition suit that it had been conveyed away by A. in his life-time. Subsequent proceedings were instituted to obtain partition of other lots not embraced in the first suit.

*Held,* that, upon ordinary principles of equity, B. would be entitled to have this mistake corrected ; that this correction might be made by taking the value of the lot into estimation in determining the share to be assigned to B. in the lots embraced in the second partition suit.

3. The value of the lot thus to be taken into consideration is, it would seem, its value at the time of the allotment in the first partition proceedings.

4. This equity in favor of B. is not of such a character as to cease with his death ; it would pass by a devise by B. of all his property including the lands embraced in the second partition suit. (SCOTT, Judge, dissenting.)

## *Appeal from St. Louis Land Court.*

This was an action for partition. William Christy died in the year 1837 possessed of numerous and valuable lots and tracts of land. He left him surviving the following heirs at law : two sons, Edmund T. Christy and Howard F. Christy ; four daughters, Harriet M. Dean, Matilda N. Taylor, Mary Ann Wright and Virginia N. Christy (now Mrs. Smith, plaintiff in this suit) ; and four grand-children, three of whom, Mary Ann Berry (now Mrs. Pendleton), Martha E. Berry (afterwards Mrs. Mitchell), and Frances S. M. Wash (now Mrs. Goode), were the children of Frances W. Wash, a daughter of said William Christy, and one, Mrs. Martha J. Sweringen, the daughter of Mrs. Farrar, who was a daughter of said William Christy.

Said William Christy executed a will, of which the following is a copy: " I, William Christy, of North St. Louis, in the county of St. Louis and State of Missouri, do make this my last will and testament. I give and bequeath to my beloved wife, Martha T. Christy, for and during her life, two entire blocks, of six lots each, of land on which I now reside and otherwise occupy, with all the buildings and other appurtenances thereunto belonging, for a place of residence for her and any of my children she may choose to live with her. I also give and bequeath to my beloved wife aforesaid, for her support and the support and education of my young and unmarried children, all my income of every kind, with all the slaves I may own at my death ; and I do hereby authorize my executors hereafter named, to sell or otherwise dispose of any of my slaves, at the request of my wife, and to supply their places with others more suitable ; and it is my will and desire that my wife shall, and she is hereby at liberty to, bestow my slaves at the time of her death to any one of my children, or make equal division thereof amongst them, or otherwise as she may think best. I also give and bequeath to my beloved wife, her heirs and assigns, forever, all my stock of horses, cattle, &c., all my household and kitchen furniture and provisions which may be on hand at the time of my death ; also, for her support and the education of my daughter Virginia, all the money which may be due me after my debts are paid, and all the rents and proceeds of my property, of every description, for and during her life ; and I hereby authorize and empower my executors, or any two of them, to sell any of my land not otherwise disposed of, for the payment of my debts ; also to make conveyances to [of] my lands, which I may have and not conveyed, in as full and ample a manner as if done by me. I also give and bequeath to my grand-daughters Mary Ann Berry, Martha Eliza Berry and Frances Wash, children of my daughter Frances W. Christy, such portion of my landed estate as would have been their mother's had she survived me and I had died intestate, to be divided equally between them. I

also give and bequeath to my daughter, Virginia M. Christy, the two blocks of lots, &c., herein willed to her mother during her life, to her, the said V. M. Christy and the heirs of her body forever; but should she die without leaving heirs of the body, the property hereby willed to her [and her] mother during their lives shall then be and become the property of Edmund T. Christy and Howard F. Christy, to them and their heirs of their bodies, or either of them; in case that but one of my said sons shall leave a legal or legal heirs of his body, that one shall inherit the aforesaid property. Should my grandson Thomas Wright live until he is fifteen years of age and be then at college, my executors, or any one of them, are hereby empowered to dispose of as much of my landed estate as will enable them to pay three hundred dollars yearly for three years, in support of his education, if necessary. It is also my will that my executors, or any one of them, shall pay to my daughter Virginia, from the income of my estate, yearly, four hundred dollars, to commence after the death of her mother, should she be then unmarried, and continue the payment yearly until she shall be united in the bonds of matrimony. All my North St. Louis property, which has not or may not be disposed of before may death, and which lots or pieces of land can be divided by the numbers which will be found in the deed made to me by my partners, each taking a proportion of the most valuable and least valuable with a deduction from those who has or may have received a lot or lots, so as to do equal justice to all, without interfering in any manner with the houses or lots willed to my daughter Virginia. In order to provide the means to pay off the legacies herein contemplated, I reserve from sale or division among my children a small block of six lots of land lying between Tenth and Eleventh streets, within my meadow field and a little west of the Catholic college, and numbered seventeen, eighteen, nineteen, thirty, thirty-one, thirty-two. The said lots or any part of them my executors or any one of them are hereby fully empowered to sell and convey, and dispose of the money, agreeably to my in-

tentions made known in this will. Taking into considera-
tion the present state of the remaining members of my family,
I think it but just and equitable that my grand-daughter
Martha J. Sweringen shall receive only one-half of such
proportion of my landed estate as would have been her mo-
ther's had she survived me and I had died intestate. I give
and bequeath to my daughter Virginia the four western ten-
ements of my brick row, with their width of the lot to the
southern line of said lot, with the right to use the water of
the well in said lot without restraint. And lastly, I do here-
by nominate and appoint Judge Robert Wash, Gen. W. H.
Ashley, Nathaniel P. Taylor, and my old friend Gen. William
Clark, executors of this my last will and testament, who are
hereby, or any two of them, fully empowered to transact the
business contemplated by this my last will. Should it so
happen that any one or more of the persons named as my
executors shall find it inconvenient to act, or having acted
shall wish to withdraw, they or either of them are hereby
authorized to appoint his successor or successors, who when
thus appointed shall possess the same power and authority,
under this, my will, as those appointed now by me," &c.

The plaintiffs in this suit—which was commenced Febru-
ary 9, 1855—are Edwin B. Smith and his wife Virginia M.
Smith, daughter of said William Christy. Partition is sought
of fourteen lots of which William Christy died seized. Mar-
tha T. Christy, widow of William Christy, died in the year
1849. Edmund T. Christy died in the year 1851, having
received advancements exceeding in value the share he would
have been entitled to as heir of said William Christy. How-
ard F. Christy died in the year 1853, having devised all his
interest in the land sought to be divided to his wife Susan
Preston Christy. The petition set forth that Mrs. Martha J.
Sweringen was entitled to an interest of $\frac{1}{14}$ $(\frac{6}{84})$ in the lots
embraced in this suit; that Mrs. Dean, Mrs. Taylor, Mrs.
Susan P. Christy and Mrs. V. Smith were each entitled to an
interest of $\frac{1}{6}$ of $\frac{13}{14}$ $(\frac{13}{84})$ in said lots; that the children of Mrs.
Wright were entitled collectively to the same interest; that

Mrs. Goode and Mrs. Pendleton were entitled each to an interest of $\frac{1}{3}$ of $\frac{13}{84}$ in said lots; that Mrs. Mitchell's heirs were entitled collectively to the same interest.

Mrs. Sweringin answered claiming one-fourteenth of the property not specifically devised by W. Christy, and also claiming compensation for one-fourteenth of all property specifically devised. The answer sets forth sundry parcels of property which were specifically devised by said Christy, and charges that had he died intestate Mrs. Farrar, mother of said Mrs. Sweringen, had she survived him, would have been entitled to one-seventh of the lands specifically devised, and prays for compensation accordingly.

George W. Goode and wife answered setting forth that Mrs. Wash—mother of Mrs. Pendleton, Mrs. Mitchell and of Mrs. Goode—was the daughter of William Christy; that Mrs. Goode was entitled to an interest of one twenty-first part of all the lands not specifically devised, and was entitled to compensation out of the estate of the deceased for the land specifically devised. Compensation was accordingly claimed for the specific devises. A similar answer was filed in behalf of the children of Mrs. Mitchell, by their guardian. D. D. Mitchell also, as administrator of his wife, claimed compensation, by separate answer, for the property specifically devised.

Susan P. Christy, widow and devisee of Howard F. Christy, answered, setting forth a prior partial partition, in the year 1843, among the heirs of William Christy. The answer proceeded to set forth that in the said partition a certain lot of land, No. 256, of 80 feet front by 150 feet deep, in block 67, was assigned and allotted in fee simple to her husband, Howard F. Christy; that the title to said lot entirely failed, said William Christy having conveyed the same in his lifetime, by deed duly acknowledged, to Bernard G. Farrar; that said lot was assigned by the commissioners in ignorance of the fact that it had been conveyed away by said W. Christy in his lifetime. She prayed the court to direct the commissioners to allot to her, from the estate undivided, property of equal value to the lost lot, No. 256, and to assign to her thirteen eighty-fourths of the residue.

Those portions of the answers of Mrs. Sweringen, Mrs. Goode, Mrs. Mitchell, and others, setting forth the grounds upon which compensation was claimed in respect of the lots and tracts of land specifically devised, were stricken out on motion of plaintiff; so also was that portion of the answer of Susan P. Christy setting forth the facts on which a correction of the mistake in the allotment of lot No. 256 was prayed.

An amended answer was filed by Susan P. Christy setting forth at length the proceedings in the partition suit in 1843. It also set forth that on September 20, 1832, William Christy and wife conveyed certain property to their sons Edmund T. and Howard F. Christy ; (for the terms of this deed see the case of Farrar & Sweringen v. Howard F. Christy's Adm'rs, 24 Mo. 455 ;) that this property had been brought into hotchpot in the petition of 1843, and had been charged as an advancement in fee simple to Howard F. Christy ; that Howard F. Christy became embarrassed and procured a release, October 7, 1842, from the heirs of Wm. Christy, and at the same time executed a bond to J. T. and Martha Sweringen to indemnify them for any interest they might release ; that suit had been instituted by Sweringen and wife on the bond, alleging that they would have been entitled to the property at the death of H. F. Christy if they had not released it, and claiming damages of his administrator ; that similar suits had been instituted on alleged lost bonds by other heirs ; that the heirs of William Christy had caused H. F. Christy to be charged for said property as an advancement in fee simple, and had received full compensation therefor in other property in the partition of 1843 ; that it was contrary to equity to exact double payment for said property and for the plaintiffs in said suits to allege that they had any right to recover compensation for the property charged as an advancement in fee simple to him in 1843. She prayed that no further partition should be made of the estate of William Christy until Sweringen and wife, and the other plaintiffs, should dismiss their suits on the bonds.

This answer was stricken out on motion of plaintiffs.

*W. Preston,* for appellant Susan P. Christy.

I. The court erred in sustaining plaintiffs' motion to strike out a portion of Susan P. Christy's original answer. The estate of coparcenary still exists in Missouri; it has never been abolished. It is called for and incorporated in the statute of descents. All the co-tenancies known to the common law are yet in force here. The partition act itself recognizes them. The decisions do not sustain the observation of Kent. (4 Kent, 367.) A distinction still exists between coparcenary and estates in common. (See 4 Cruise, 84, tit. 32 Deed, ch. 6, § 16.) There was an implied warranty in a *deed* of partition among coparceners. Joint tenants and tenants in common were left to their mutual covenants in their deeds. Parceners were compellable to make partition by writ; otherwise with joint tenants and tenants in common. If the latter voluntarily made partition, the law would not raise mutual covenants for the protection of the title by implication. By the statute of 31 Hen. VIII. joint tenants and tenants in common become compellable to make partition. An implied warranty was then annexed to the partition *because it was compulsory.* Thus the rule arose that when *compulsory* partition was made by writ or judgment between joint tenants or tenants in common, there was an implied warranty; but where *voluntary* partition was made by the private act of the parties, they were left to the mutual covenants in the deed of partition, as at common law. (See Co. Litt. 167 *a*; id. 187 *a*; Rector v. Waugh, 17 Mo. 1.)

II. An implied warranty is annexed to the partition among the heirs of William Christy. By the common and by the civil law there is an implied warranty in all cases of partition among co-heirs. (See Litt. sec. 262, 263; Co. Litt. 173 *b*, 174 *b*; 2 Domat, Civ. Law, p. 160, § 2749, 2777, 2778, 2781; Bustard's case, 4 Co. R. 121; 1 Domat. § 382; Allnatt on Part. 1567; Bac. Abr. Coparceners, F.; 1 Tuck. Com. 173.) Such was the general law of Europe, and no cases in conflict with it are known to have arisen in the United States. (See Weiser v. Weiser, 5 Watts, 280; Patterson v. Lanning, 10

Watts, 135; Venable v. Beauchamp, 3 Dana, 321.) No court in England or America ever held that where a partition was by act of law the partitioners were not subject to repartition, (Cro. Eliz. 902; 3 Bibb, 309,) or to contribute compensation where the title failed or property was allotted by mistake. Where the partition is by writ *de partitione facienda* or judgment, there is an implied warranty. In the case of William Christy's heirs, the partition was made by the circuit court in 1843. Howard F. Christy was forced into acquiescence in the decree. He objected to the partition. He did not know then that the lot No. 256 had already been conveyed by his father. (See 11 Pick. 311; 4 Bibb, 355; 3 Greenl. 214; 2 Cruise Dig. 399; 12 Hen. & Munf. Statutes, 138; R. C. 1835, p. 222; Sawyer v. Cator, 8 Humph. 286; Rawle on Cov. 468-9.) There is nothing in the case of Rector v. Waugh, 7 Mo. 1, hostile to the views here urged. (See Picot v. Page, 26 Mo. 398.)

III. The devise of Howard F. Christy to his wife did not so sever the privity of estate as to destroy the implied warranty. The authorities cited by Mr. Shepley do not apply to the case before the court. They refer to alienations by parceners and evictions of the alienees *after* partition. It is not true that if one, seized of real estate protected by an implied warranty, devises it, the warranty is gone and the devisee deprived of it. The devisee is subrogated to all the rights of the devisor. Howard was entitled to a warranty in his lifetime, and at his death it would have descended to his heirs if he had died intestate. The devisee is the testamentary heir, and is preferred in law to the statutory heir. Where land is devised and the devisee is evicted, the damages upon a covenant for title broken belong to the devisee and not to the heir. (2 Atk. 369.) Susan P. Christy is clothed with all the rights of Howard Christy in regard to the property. Whatever is descendible in Missouri is devisable. At common law, when the privity of *estates* was wholly destroyed among parceners the implied warranty ceased. This means where *all* the parceners have aliened or all have been evicted.

In the present case the privity is not wholly destroyed. The parties to the partition of 1843 yet hold large and valuable estates under it. (See Bustard's case, 4 Co. 121.) Mrs. Christy is a privy in estate. She took the estate with all the incidents, rights and benefits Howard Christy possessed. She is entitled under the equitable principle of contribution to the relief demanded.

IV. If we only regard this case in an equitable light, as a *mistake* of the commissioners in assigning the lot No. 256 to Howard F. Christy, then his devisee is entitled to relief. Such mistakes of fact are always relievable in equity. (1 Sto. Eq. § 140.) The equitable principle of contribution for the loss warrants the correction of the mistake and entitles Mrs. Christy to relief so as to give Howard Christy and his widow his equal part of William Christy's estate. (See Sawyer v. Cator, 8 Humph. 265, 287.)

The court erred in striking out the amended answer of Susan P. Christy. (See 2 Hill. on Real Prop. 208 ; 14 Ves. 338 ; Prec. Chanc. 170 ; Thompson v. Exec'rs of Carmichael, 4 N. Y. Leg. Obs. 134 ; 3 Ired. 581 ; 2 Williams on Exec. 1286–9 ; 2 P. Wms. 445 ; Dyer, 92 ; 2 Smith L. Cas. 670, 677 ; 11 Pick. 311 ; 8 Wend. 1 ; Bompart v. Roderman, 24 Mo. 385 ; 2 Pick 20 ; 3 id. 288 ; 12 Metc. 139.)

VI. The court did not err in striking out the answers of Sweringen, Mitchell and Goode.

*F. A. Dick* and *W. T. Wood*, for appellants, Goode and wife and Mrs. Mitchell's heirs and administrator.

I. The court erred in striking out parts of the answers of Goode and wife, and of Mitchell.

II. The court committed no error in striking out part of the answer of Susan P. Christy. The parties to this suit were not coparceners, as understood at common law. (2 Cruise Dig. tit. 19.) The parties take their shares of the estate of William Christy by virtue of his will. The warranty between coparceners in partition at common law applied to specific property remaining to the other coparceners, and included in the partition, and never had force in Missouri.

The parties to this suit were tenants in common in the lands devised by Wm.Christy. An incident of this estate was compulsory partition. At the time of the partition there was an implied understanding amongst all the parties that the lands brought into the partition were held by valid title. It would at the time of the partition be a defence to the action to plead defect of title. If not then pleaded the parties are estopped. If the title is not valid the parties can not be forced into partition. If they choose, by consent, neglect, or error of fact even, to treat the title as valid, they must, as amongst themselves and their privies, be precluded as to title. If the judgment in partition is not conclusive, how far does the supposed warranty extend ? How long will it continue after the partition made ? What becomes of the warranty after the lot is sold to a stranger ? How, where all the lots are sold ?

*Shepley*, for respondents.

I. The court committed no error in striking out the amended answer of Susan P. Christy.

II. In the United States there is no warranty annexed to any partition of land by writ, judgment or decree. The estate of coparcenary, as it existed in England, does not exist here. It is foreign to our system of the tenure of estates ; it can no more co-exist with our system of landed estates than could primogeniture. The kind of estate, its tenure, the incidents attached to it, and the consequences resulting from it, are all inconsistent with the manner in which our landed estates are held and conveyed. Both Chancellor Kent and Mr. Greenleaf agree that if coparcenary exists at all in this country, it is practically and substantially the same as tenancy in common. No warranty was annexed to a compulsory partition between tenants in common and joint tenants. Partition by writ was given by the statute 31 Hen. VIII. This statute gave the form of the proceedings. The incidents that attached to the kind and quality of the estate, as the implied warranty in cases of partition, did not

follow. (See observations of Kennedy, J., in Weiser v. Weiser, 5 Watts, 280–1.) If there is a warranty annexed to partition by writ in this state, it is just that warranty and none other that is or was annexed to a partition between coparceners in England; such a warranty is against the policy of our law and would unsettle estates. Upon failure of title while in her hands, the parcener could, if she so elect, annul the partition altogether. (2 Cruise Dig. tit. 19, sec. 30; Allnatt on Part. 156.) An alience of a parcener can not recover from the other parceners if his title fails; but the other parceners not having aliened, if their title fails, can recover of the alienee. (Allnatt on Part. 159; Sawyer v. Cator, 8 Humph. 280.) The answer of Susan P. Christy alleges that Howard sold lot No. 256. Neither he nor his alienee can have any benefit of the implied warranty. (Allnatt on Part. 159; 8 Humph. 280.) Mrs. S. P. Christy took from Howard by purchase. She could have no benefit of the implied warranty if such exists. If there be a warranty attached to any land either divided in the partition suit or which was valued as an advancement, yet it is an implied warranty that attaches only to the land included in that partition, and does not affect other land of the parties whether divided or undivided. (Weiser v. Weiser, 5 Watts, 283, and cases cited.) If a warranty attached to any or all the lots for which it is claimed, yet that is not a subject matter of defence to this suit, which is a pure statutory remedy. If there be a warranty, the case is no stronger than if a covenant of warranty had been inserted in a deed of the land. Could it be for a moment contended that a breach of such covenant would be any defence to an action for partition of other lands brought by one of these parties for partition under the statute?

III. The court committed no error in striking out portions of the answers of Sweringen and wife, Goode and wife, Mrs. Mitchell's heirs, &c.

NAPTON, Judge, delivered the opinion of the court.

Several points have been discussed in this case which we think it unnecessary to determine.

The answers of Sweringen, Mitchell, Goode, &c., involve the proper construction of Christy's will. At the date of this will, two of the testator's daughters were dead—one of them, Mrs. Wash (previously Mrs. Berry), leaving three children—and the other, Mrs. Farrar, leaving one daughter, Mrs. Sweringen. The third and eighth clauses of the will declare what portion of his estate undisposed of these grand-children should take. They provide that the three children of Mrs. Wash shall have their mother's share, and the one child of Mrs. Farrar shall have only half of her mother's share; but, in undertaking to describe what the mother's share in each case would be, the testator uses language to indicate a child's portion of his entire estate, without reference to the deductions already made from it by his specific legacies to his daughter Virginia and to his executors for the payment of his debts. He speaks of it as " such portion of my landed estate as would have been her mother's had she survived me and I had died intestate." Of course, if the testator had died intestate, Mrs. Sweringen's mother would have been entitled to one-seventh (or a child's part) of his *entire* estate, and one-half of this one-seventh is what Mrs. Sweringen now claims, and one-third is demanded as the share of each of the children of Mrs. Wash.

The testator had already devised specific portions of his real estate to his daughter Virginia, and also a portion of his real estate to his executors for payment of his debts. Three of his daughters he did not name in his will at all. If we construe the intestacy alluded to in these devises to Mrs. Sweringen and to the children of Mrs. Wash as a *total* intestacy, the effect of such construction is either to force the specific devisees into hotch-pot with the other children named and not named, or to diminish the shares of the children not named by subtracting from them the amount of the

estate specifically devised. A reference to the entire scope of the will will show that either of these results would be directly contrary to the intent of the testator.

Unless the will so provided, it is plain that the specific devisee is not bound to bring her legacy into hotch-potch. A devise is not an advancement in the meaning of the statute. As the share of Virginia, the specific devisee, could not be disturbed, then the effect of the construction contended for by the representatives of Mrs. Wash and Mrs. Farrar is to throw the entire burden of the specific devises upon the children not named, whose shares would thus be diminished in exact proportion to the increase of the specific devises ; whilst the share of the *grand-children* who are named, and named with altogether another purpose in the testator's mind, would be more and more disproportionate to the shares of the *children* not particularly named. The testator had evidently no such purpose in contemplation. He was providing only in reference to that portion of his estate not already disposed of, and his intention seems to have been that it should be distributed exactly as the law would distribute it, except in one particular. For reasons satisfactory to himself, he declared that Mrs. Sweringen should only have one-half of her mother's share. His only reason for mentioning the representatives of his two deceased daughters was to determine their shares according to what he esteemed right, without regard to the rule which the law of descents might apply, concerning which he was uninformed, and against the operation of which, if it should conflict with his intentions, he wished to guard. He therefore virtually says: " I devise all my estate, which I have not disposed of in this will, to be legally divided among my children ; and as to the children of my deceased daughters, Mrs. Farrar and Mrs. Wash, my will is that the three children of the latter shall have each one-third of their mother's share, and that Mrs. Sweringen shall not have the full share of her mother, but only a half share ;" and the intestacy he alludes to is intestacy as to the

property he was then speaking of, and not as to that portion of his estate already devised.

The answers of Mitchell, Goode and Sweringen were therefore properly stricken out.

So much of the answer of Susan P. Christy as relates to the suits now pending on the bonds given by Howard Christy to the heirs of William Christy appears to be foreign to any issues in this case. If the facts alleged are a good defence in equity or law to those suits, why litigate the matter here? The answer asserts that the defence is a good one, and if so, the suits upon the bonds can not result to her injury.

The answer of Susan P. Christy also stated that in the former partition of W. Christy's estate, a lot (No. 256) had been assigned to her husband, Howard Christy, which it turned out had been conveyed by William Christy in his lifetime to Bernard G. Farrar; that this allotment by the commissioners was made in ignorance of the fact and by mistake; and the court is asked to allow her for the value of the lost lot in the division now to be made. The right of Howard Christy or his devisee to have this mistake corrected is the question involved in this portion of Susan Christy's answer. This right has been chiefly based upon a warranty which every partition among coparceners is supposed to create. It is insisted that this warranty was by the common law annexed to every compulsory partition among coparceners, and that no statute in Missouri has altered the law in this respect. On the other hand, it is argued that the estate of coparcenary as known in England has no existence here; and, whether it exists or not, that the doctrines of implied warranty in reference to this estate have never been adopted here, and are contrary to the spirit, if not the letter, of our laws; and finally, that, admitting the existence of the estate and of the doctrine of warranty in connection with it, still, under the doctrine as understood in England, the alienee of a coparcener is not entitled to the benefit of it, and that Mrs. Susan P. Christy is therefore not in a position to assert the claim. We do not propose to examine these questions, although they

have been extensively discussed. Waiving their consideration entirely, we do not see any good reasons why Howard Christy, if living, might not, upon ordinary principles of equity, assert the claim which is now urged by his widow. Whether his devisee, Mrs. Christy, occupies as favorable a position as he would, is another question, which we will separately examine.

Laying aside all considerations of a warranty, express or implied, we have a state of facts alleged in the answer which would seem to authorize the action of a court of equity under its ordinary jurisdiction over accidents or mistakes. A partial partition of Christy's estate is made, in which a lot has been assigned to his son Howard which the father had several years before conveyed away. The fact was not known at the time of the partition by any of the parties to it, or to the commissioners who made the allotment. The partition embraced only a portion of the estate, and a second and final partition of the residue is about to be made. Before any final distribution, the court is called upon to have this mistake corrected, not by any disarrangement of the former partition, but simply by taking the lot into estimation in determining the shares of the son to whom the lost lot was assigned in the former partition. I do not perceive that it is necessary to invoke any principle of warranty in such an application. The plainest principles of equity require that the mistake should be corrected, if it can be done without injustice to others ; and what is to prevent it here ? No final partition has been made ; the partition is still *in fieri*, still in the power and under the control of the court. The two partitions may be regarded as parts of one transaction so far as the rights of all the parties here are concerned. In the first partition, which was a partial one, a lot was assigned to Howard Christy which was really no part of his father's estate, which in fact had been conveyed away by a deed duly acknowledged and recorded years before. Another portion of the estate is now to be divided, and there is certainly nothing inequitable that this error should be corrected. It is hardly

proper to call this a failure of title ; there was no defect in Wm. Christy's title at the date of the conveyance to Farrar, but this conveyance was made long before his death, and, although on record, was unknown to all the parties to the partition of 1843. The assignment of lot 256 to Howard F. Christy was merely a mistake. If a final partition of his estate had been made, the only ground perhaps upon which that partition could be disturbed by the state of facts averred in this answer would be an implied warranty. But viewing this partition as incomplete, as still going on, we do not see why, without reference to any warranty, a mistake in a partial partition may not be corrected in a subsequent one, just as under our statute of descents and distributions a probate court would regulate such equities in distributions of personal property from time to time among the personal representatives of the decedent. This would seem to be very clear if Howard Christy was alive and now asking the interposition of the court to give him the benefit of this equity in the final division of his father's estate. Has his devisee, Mrs. Christy, the same right ?

The doctrine of implied warranty on a compelled partition among coparceners is not free from obscurity in some of its details, but it seems to be a part of that doctrine as known in England and adopted in some portions of this country, that when the privity of estate is destroyed by an alienation, neither the coparcener nor the alienee has any recourse upon the remaining coparceners. (Allnatt, sec. 3 ; Sawyer v. Cator, 8 Humph. 256.)

This however is not the redress sought here. The relief demanded does not require any disturbance of the former partition. Is this equitable claim purely personal, and was it extinguished by the death of Howard Christy ? If it was not, it would go to his heir, unless his will has created a testamentary heir.

It would seem from our statute concerning wills, that whatever is descendible is devisable. That statute authorizes the testator to dispose of " all his estate, real, personal

and mixed, and all interest therein." It is fully as broad as the statute of descents and distributions, which embraces every " title to any real estate of inheritance or personal estate undisposed of." In England, even before the statute of I. Vic. ch. 26, the power of testamentary disposition extended " to all interest in real and personal estate which, at the decease of the testator, would, if not so disposed of, devolve to his general, real or personal representatives, whether the testator be the legal or beneficial owner only or unite in himself both these characters." (1 Jarman on Wills, ch. 4, p. 81.) And in most parts of the United States the settled test of a·devisable interest is that it is descendible. (4 Kent, c. 512–13.)

The will of Howard Christy uses language as comprehensive as could well be found. It devises all his estate, real, personal and mixed, in Kentucky, Missouri and elsewhere, present and expectant. If a will can be framed to clothe the devisee with all the rights of heir, this would seem to have accomplished that purpose.

The only real question then left is, whether the right of Howard Christy to a distribution or partition of his father's land—the amount and value of which is to be determined by a mistake in a former partition—ceased with his death. The equity is not in the lands which have been partitioned, but in the lands now subject to partition. His share of these lands, without reference to the former mistake, is not denied, and that his interest passed to his widow under his will is not denied. Had he left children, their right to the same equitable division which he had would hardly be denied. It would seem to follow that his devisee is entitled to the same right. Suppose, in a division of personal property, the administrator, under the sanction of the probate court, had, in the distribution of a portion of an estate in money, made a plain arithmetical miscalculation, by which one of the distributees received a thousand dollars less than he was entitled to upon a correct application of the common rules of arithmetic, could not that distributee, upon a final division of the

Smith v. Sweringen.

remaining portion of the estate and an ascertainment of the mistake, have it corrected ?  Could not his heir or devisee, if he died before final distribution ?

What there is in this case to prevent the application of these familiar principles of equity, I do not see.  Much learning, it is true, has been explored, and the ancient doctrine of warranties by implication has been cited with approbation on one side and denunciation on the other.  I think the action may be dispensed with in this case and justice still be done.  When it shall become necessary to determine its existence or extent here, it will be time enough to say how far it may consist with our laws and usages and necessities, and how far positive enactments or long disuse may have rendered it inoperative.

Our opinion is, that Mrs. Christy's answer in relation to lot 256 ought not to have been stricken out.  It would be premature to determine upon what basis the value of this lot should be settled.  The answer being stricken out, the facts have not been sufficiently developed upon which the court could now form a definite opinion.  The facts may indeed not turn out as stated in the answer, but, assuming that they are mainly and essentially correct, we incline to the opinion that the value of the lot at the time of the first partition is the proper basis of relief in the new decision.  As it could not be foreseen whether the value of the lot 256 would appreciate or depreciate, whether it would be productive or unproductive, its simple value in 1843, without reference to speculations as to its rise or fall, its productiveness or unproductiveness, seems to be the fair allowance to Mrs. Christy in the present partition suit.  To give her the increased value of the lot now, or the interest on its value in 1843, would be speculating on contingencies too remote.

Judge Richardson concurring, the judgment will be reversed and the cause remanded.

Scott, Judge.  I do not understand how, as devisee, Mrs. Christy is entitled to the relief she seeks in regard to the lot

assigned to her husband in the first partition, the title to which afterwards failed. The closeness of her relationship to her husband can have no influence. As devisee, so far as this question is concerned, she occupies a position not superior to that of one, as devisee, who was a stranger to the devisor. Does a mere right of action growing out of the purchase of a lot of land by a devisor pass to the devisee of that land? Suppose H. Christy had acquired by purchase a lot devised to his wife, and the vendor in the transaction, there being no warranty, had committed a fraud—had represented that he had a good title, knowing that he had not— would Mrs. Christy, as devisee of the lot, have had a right of action to recover damages for the fraud committed by the vendor? If there was nothing now but money to distribute among the heirs of Wm. Christy, would not Mrs. Christy's claim to the indemnity she seeks be as strong as though there was land to be divided, as it turns out to be? If money was to be distributed, her case would not vary from that supposed, and can her right to relief depend on the nature of the fund out of which it is sought? Would not her equity to the money be as valid as it is to the remaining land? A right to enter for a condition broken, or under the warranty annexed to an exchange, is not devisable, nor is the benefit of a condition unless it be annexed to a reversion. (4 Kent, 510.)