## PRESTON v. SMITH.[1]

*(Circuit Court, E. D. Missouri.   March 26, 1886.)*

1. PLEADING—WHAT A DEMURRER ADMITS.
    A demurrer to a bill admits the truth of facts well pleaded, but not of averments amounting to statements of law.

2. SAME.
    Where a bill to quiet title shows the source and nature of the complainant's title, and contains an allegation that his title is clear and undisputed, a demurrer to the bill will be taken to admit only such title as the facts stated disclose.

3. REAL PROPERTY—ESTATES TAIL.
    Section 3941, Rev. St. Mo., abolishes estates tail in Missouri.

4. EQUITY—INJUNCTION TO RESTRAIN WASTE.
    A court of equity will not issue an injunction to restrain waste, unless the complainant's title is clear, or has been adjudicated on.

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

5. SAME—BILL TO REMOVE CLOUD UPON A TITLE.
   A bill to remove a cloud upon a title will not be sustained, as a general rule, where the alleged cloud is created simply by matter of record.

6. SAME.
   The mere fact that a life-tenant is granting leases for terms extending beyond the duration of the life-estate is no basis for any action by the remainder-man.

7. SAME—SLANDER OF TITLE.
   For mere slander of title, a party injured will be left to his legal remedy.

8. SAME—LIFE-TENANT AND REMAINDER-MAN.
   An action cannot be maintained in equity by a remainder-man against a life-tenant for the purpose of adjudicating the title of the former. The remedy is by action at law, and should be against the other claimants of the remainder.

9. SAME—BILL FOR DISCOVERY.
   A bill for both relief and discovery cannot be sustained solely for the sake of discovery.

10. SAME.
    *Semble*, that a bill cannot, as a general rule, be sustained solely for the sake of discovery.

In Equity. Demurrer to bill. For opinion on demurrer to original bill see 23 Fed. Rep. 737.

*Henry Hitchcock*, for complainant.

*John Wickham* and *Given Campbell*, for defendant.

BREWER, J. On the fourth day of March, 1885, complainant filed his bill in this court for an injunction against the defendant. To that bill a demurrer was filed, and after argument sustained. Thereafter, on July 30, 1885, an amended bill was filed. To that a demurrer has been interposed, and is now submitted for decision. The bill charges that the defendant holds the life-estate simply in certain premises described, while the complainant owns the remainder in fee. The bill further avers that the defendant is a privy in estate with complainant, and as such privy in estate ought not to do any act or say anything to deny the complainant's title to said land, or to cloud or impeach his title; but that said defendant has so acted, and is so acting, as to cloud complainant's title, in divers ways: (1) By stating and declaring to sundry persons, including her tenants in possession of said lands, that complainant has no interest therein, and that the fee in remainder thereof has already vested in other persons, heirs at law of William Christy, including the defendant. (2) By granting leases and creating terms in said land purporting to extend beyond the period of her own natural life, and beyond the rightful duration of her life-estate; and that she is in possession of said lands by and through divers tenants holding the same under her. (3) By wasting said property, and granting leases at back rent, cutting down trees, etc. (4) By confederating with divers persons beyond the jurisdiction of this court, claiming to be William Christy's heirs at law, to becloud the title of complainant as stated. (5) And that by such declarations and acts she is tortiously clouding the title of complainant, and greatly injuring him in the enjoyment of his rights as remainder-man in fee; and that in consequence of said declarations and

acts of defendant here complained of, complainant has been, in fact, prevented from raising money by mortgage on his interest as remainder-man.

In the original bill the allegations as to the respective titles of complainant and defendant were comparatively brief and in general terms. In the amended bill the nature and extent of the titles are more fully described, and it is insisted that the complainant's title has been adjudicated; that it is a clear, legal title; and that practically it is admitted to be such by the demurrer. All of these matters are challenged by the defendant's counsel.

The first inquiry, therefore, naturally is, has the complainant's title been adjudicated? A brief preliminary reference to the nature and source of title is important. Both claim under the will of William Christy, who died in 1837, leaving a widow and several children. By that will he gave a life-estate in these premises to his widow. He further disposed of the premises in these words:

"I also give and bequeath to my daughter, Virginia M. Christy, the two blocks of lots," etc., "herein willed to her mother during her life, to her, the said V. M. Christy, and the heirs of her body, forever; but should she die without leaving heirs of the body, the property hereby willed to her [and her] mother during their lives shall then be and become the property of Edmund T. Christy and Howard F. Christy, to them and their heirs of their bodies, or either of them. In case that but one of my said sons shall leave a legal heir or legal heirs of his body, that one shall inherit the aforesaid property."

The defendant is Virginia M. Christy, the party named in this devise. The bill avers that the defendant is without heirs of her body; is now more than 60 years of age, and without any possibility of leaving such heirs. It also appears that Edmund T. Christy died in the year 1851, without heirs of his body; that in 1853 Howard F. Christy also died without heirs of his body, but having devised all his interest in this land to his wife, Susan Preston Christy, from whom complainant obtained title.

Now, it is insisted that in the case of *Smith* v. *Sweringen*, 26 Mo. 551, the complainant's title was adjudicated. I have examined the opinion in that case, and see nothing which either directly or by implication can be considered an adjudication of complainant's title. The facts in that case are these: As above stated, William Christy died in 1837, leaving a widow and several children. Also some grandchildren, children of two deceased daughters. By his will he made certain specific devises. To three of his grandchildren, children of a deceased daughter, he devised such portion of his landed estate as would have been their mother's, had she survived him, and he had died intestate. He made also a similar devise to the daughter of his other deceased daughter. Three of his daughters were not named in the will, and as to them he died intestate. After his death, and in 1843, during the life-time of his widow, a partial partition was made among the heirs. After the death of the widow, and in 1855, the defendant in this suit and her husband commenced an ac-

tion of partition in the St. Louis land court. It was specifically an action for the partition of 14 lots. The court held, first, that the intestacy named in the will was a partial and not a total intestacy, and the partition, therefore, between the heirs was to be of the property not specifically disposed of. It does not appear that any suggestion was made or considered as to where the remainder in fee of these specific blocks was vested. The action was for the partition of 14 lots. It does not appear that partition was asked of any other lots. The defendants, it is true, claimed compensation on account of an alleged total intestacy, and the court simply denied that claim. It does not appear that any inquiry was made as to whether there was other property to be partitioned, but the decision went simply as to the rights in these 14 lots. The other questions decided as to the effect of this partition suit upon certain suits on bonds given, and as to compensation for a mistake in the prior partition, are equally foreign to the question of title to the specific blocks now in controversy.

It is clear to my mind that there was neither directly, nor by implication, any adjudication for or against complainant's title in that case, nor do I think it can be said that complainant's is a clear legal title. Indeed, I think it a very doubtful question as to where the remainder in fee is vested. Complainant has filed a most elaborate and learned brief upon the old common-law doctrine of estates in tail, with an inquiry into the effect of the Missouri statutes thereon. He invokes the doctrine of cross-remainders in tail, and insists that there was a vested remainder in fee in Howard F. Christy, the survivor of the two brothers named in the devise, and that though both these brothers died without heirs of the body, yet that, as Howard P. Christy had a vested remainder, it was an estate descendible, and therefore devisable. On the other hand, it is claimed by the defendants that it was but a contingent remainder,—contingent on the death of defendant without issue; that at the time of the death of Howard F. Christy without heirs, Virginia M. Smith, the defendant, the devisee of the life estate, was living, with possibility of issue; and being but a contingent remainder, it was not descendible nor devisable, and that the estate, on the death of the present defendant, the holder of the life-estate, will vest in the heirs of William Christy.

The statutes of Missouri (section 3941, 1 Rev. St.) abolish estates in tail, and declare that the person to whom the devise or grant is made, instead of being seized of the property in fee tail, "shall be deemed to be seized thereof for his natural life only, and that the remainder shall pass in fee-simple absolute to the person to whom the estate tail would, on the death of the first grantee, devisee, etc., in tail first pass, according to the course of the common law;" and the supreme court of Missouri, in *Farrar* v. *Christy*, 24 Mo. 453, have decided that that destroys all estates tail.

I think it must be held as yet an open question, and a doubtful question, whether, under that will, the remainder in fee was vested in

Howard F. Christy, the surviving brother, or in the heirs general of William Christy deceased, or perhaps in the heirs general of defendant; nor do I think that the demurrer admits a clear legal title in complainant. Of course, it admits the truth of the facts well pleaded in the bill; but where the bill shows the source and nature of complainant's title, although containing an allegation that the complainant's title is clear and undisputed, the demurrer admits only the existence of such a title as the facts stated disclose; and the averment in the bill that the complainant has a clear, legal, and vested title will be treated as the mere statement of a conclusion of law.

The conclusions to which I have come in respect to this matter of the complainant's title simplify the further questions. In respect to those questions I will merely state, in a general way, a few propositions: *First.* Only upon an adjudicated or a clear title will a court of equity issue an injunction to restrain waste. Indeed, as a rule, equity looks to the law to establish the title before its interference is invoked. *Second.* A bill to remove a cloud upon title, as a general rule, will not be sustained where the alleged cloud is created simply by matter of record. Here, whatever of title complainant may have, as well as whatever adverse titles may exist, depend upon a construction of the will of William Christy, and nothing can be done by any party, or by lapse of time, to destroy any title which he may have. *Third.* The mere fact that a life-tenant is granting leases for terms extending beyond the duration of the life-estate is no basis for any action by the remainder-man. This was held by Judge TREAT on the demurrer to the original bill, and is unquestioned law. *Fourth.* For any mere slander of title the party has his remedy by an action at law for damages. *Fifth.* An action cannot be maintained in equity by a remainder-man against a life-tenant for the purpose of adjudicating the title of the former. The remedy is by an action at law, and should be against the other claimants of the remainder. *Walker* v. *Walker,* (Sup. Ct. N. H.) 22 Cent. Law J. 252. This is obviously proper, for the remainder-man does not hold under the life-tenant, and any decree against the life-tenant would be no adjudication as against any claimant of the remainder.

This very case in that which is alleged by the complainant in aggravation of his injuries illustrates the propriety of this rule. He says that he could have mortgaged his right for $15,000 but for the clouds cast upon it by the action of the defendant. Now, in a controversy between himself and the defendant, no adjudication in his favor would establish his title or bar the heirs of William Christy upon the death of defendant from asserting their title; and if, after a decree were entered in his favor, some one should be induced thereby to loan money on his mortgage, and afterwards it should be held, in a controversy between the complainant and the heirs of William Christy, that theirs was the better title, could not the mortgagee fairly say that the unnecessary action of the court had misled

him into a loan without security? *Finally,* it is claimed that the bill must be sustained because a discovery is sought. I do not understand that a bill can be sustained solely for the sake of discovery; at least, that is the general rule. Indeed, bills of discovery are rarely, of late, resorted to. They have fallen (if I may be permitted to borrow a phrase from the political parlance of the day) into a condition of "innocuous desuetude."

In conclusion, let me say that, after a careful study of the bill, it seems to me more like an effort to establish a doubtful title than a proceeding to protect from serious wrong a clear or adjudicated title. I think, therefore, the demurrer must be sustained.

TREAT, J., *(orally.)* I did not sit in this case, but I very well remember Justice CATRON, Judge WELLS, and myself sat in the case in 1857 where the will of William Christy was considered in connection with the effect of the statute of 1825, reproduced in the statute of 1835, "docking tails," and familiarly known to the profession. This is no new doctrine. This court went over the whole ground at that time, and the then occupants of the bench reached the same conclusion to which Brother BREWER has come.