### AMERICAN ALKALI CO. v. BEAN et al.

(Circuit Court, E. D. Pennsylvania. December 5, 1903.)

#### No. 26.

1. STOCK SUBSCRIPTIONS—VARIANCE BY PAROL.

Defendants in an action on their written stock subscription which in no way intimates that they subscribed as agents or other than as principals may not show an oral agreement with the president of the corporation that their subscription was for others.

2. SAME—DIRECTING ISSUANCE IN NAME OF ANOTHER.

Defendants are not released from liability for an assessment on stock under their stock subscription by their direction in the subscription, and compliance therewith, that the stock be issued in the name of another, who did not own any of the shares, though the subscription provided that only the holders of shares of record on the books at the time of assessments should be liable therefor; this applying only to bona fide changes of ownership.

Burr, Brown & Lloyd, for plaintiff.
Thomas De Witt Cuyler, for defendants.

DALLAS, Circuit Judge. This action was brought to recover an installment of an assessment upon 2,100 shares of the preferred stock of the American Alkali Company, under a certain subscription agreement, of which it is at this point enough to say that it was executed by the defendants, and that prima facie it imposed the liability sought to be enforced. Stated broadly, the defense was that the subscription in question was not made by the defendants for their own account, but as brokers for others. The rulings of the court upon the trial excluded this defense, and I have not been convinced that those rulings were in any respect erroneous. Neither in the body of the

¶ 1. See Evidence, vol. 20, Cent. Dig. § 1760.

agreement nor in the signature of the defendants is there any intimation of agency, and it is quite certain that, if they were agents, their principals were not in any manner disclosed. Consequently they became personally bound, even if in fact they were authorized to bind others and intended to act only in pursuance of that authority. Moreover, as the legal effect of this contract in writing was to make the defendants a substantial, and not merely a nominal, party to it, the capacity in which they acted is not open to question; and the offer which was made to prove that the president of the company agreed with the defendants that the subscriptions made by them were made for their constituents was especially objectionable. It amounted to nothing but a proposal to substitute for the written contract with the corporation an oral agreement with its president. Pitcairn v. Philip Hiss Co. (C. C. A.) 125 Fed. 113. The liability which the defendants incurred under the subscription agreement was not released by anything which subsequently occurred. At the time they signed that agreement, and by writing immediately under their signature, they directed that the certificates for the stock should be in "the name of Geo. W. MacTague," who was their clerk, and who admittedly did not own any of the shares. This direction was complied with. But what did it import? Plainly, I think, that MacTague was to stand for the defendants; and, if this understanding be correct, it follows that he stood for them as absolute owners, since, as has been shown, it was as absolute owners they acquired the stock and assumed the obligation to pay for it. But it is contended that, even if the defendants would ordinarily have been liable upon an assessment made under such circumstances (of which I have no doubt), yet, that this particular agreement contained a provision which exempted them from that liability. The provision referred to is:

"Upon payment of the first installment of 20% the full-paid certificates of common stock and partially paid certificates of preferred stock, setting forth that 20% has been paid thereon, shall be delivered to the subscribers hereto and as subsequent installments are paid they shall be endorsed on the latter.

"Provided, however, that after the payment of the 20% provided for above, amounting to a total of $10 per share, the subscribers hereto·shall no longer be liable for any balance on their subscription excepting upon such shares as shall stand of record on the books of the company in their names at the time any subsequent assessments or calls are made, but the holders of such shares of record on the books of the company at that time, and they only shall be liable for the same."

In my opinion, the construction which the learned counsel of the defendants seek to put upon the foregoing extract is an inadmissible one. It could not be adopted without holding that it was contemplated that subscribers to the stock of this corporation might evade the obligation generally and properly incident to such subscriptions by simply directing that the shares for which they subscribed should stand in the name of some financially irresponsible third person. Without pausing to consider whether any provision that would really have this effect should not be disregarded as being in conflict with the policy of the law, I content myself with saying that the particular provision in question may reasonably be, and therefore should be, so interpreted as to limit its applicability to cases of bona fide changes of

ownership. What was intended, I think, was that the liability of subscribers should cease upon the actual—not merely nominal—transfer of the shares subscribed for, and that upon such transfer the new owners would become exclusively liable.

Upon the whole case I have reached the conclusion that the verdict which was rendered by direction of the court should not be disturbed, and therefore the defendants' rule for a new trial is discharged.