### BROWN v. McDONALD et al.

(Circuit Court, E. D. Pennsylvania. June 23, 1904.)

No. 39.

1. BILL OF DISCOVERY—JURISDICTION—ADEQUATE REMEDY AT LAW.

A federal court of equity will not entertain a bill of discovery, the sole purpose of which is to ascertain the names of alleged owners of stock of a corporation against whom complainant desires to bring actions for the collection of an assessment, where the bill shows that defendants, one of whom is responsible, are also liable for such assessment, since complain-

ant not only has an adequate remedy at law for the collection of the assessment, but, under Rev. St. §§ 858, 724 [U. S. Comp. St. 1901, pp. 659, 583], may call defendants as witnesses in such action and require them to produce books and papers.

In Equity. On demurrer to bill of discovery.

Burr, Brown & Lloyd, for complainant.
A. T. Ashton and John G. Johnson, for respondents.

HOLLAND, District Judge. This bill, as amended, is purely and simply a bill for the discovery, not of evidence to be used in the aid of a suit at law, but for the purpose of ascertaining the persons for whose account certain certificates of stock were purchased, and against whom the plaintiff alleges he intends to bring suit for the recovery of certain installments of assessment legally made upon the said stock. The amended bill sets forth that Arthur K. Brown, surviving receiver of the American Alkali Company, a corporation organized under the laws of the state of New Jersey, was duly authorized to levy an assessment of $10 per share upon the preferred stock of the said corporation, the first installment of which, amounting to $2.50 per share, was required to be paid October 21, 1901, and on November 14, 1902, the Circuit Court of the District of New Jersey authorized the receiver to collect this installment from the holders of said stock, as they appeared upon the books of the company on September 16, 1901, and on that date one William J. McDonald, one of the defendants in this case, had registered in his name 1,100 shares of this preferred stock. It is further averred that the said William J. McDonald was on September 16, 1901, and is now, a clerk in the employ of Sparks & Co., also defendants in the bill, who are stockbrokers engaged in the business of buying and selling stock in the city of Philadelphia, and that the said McDonald is not, and never was, the real owner of the 1,100 shares of the preferred stock in the said company, or any of them, but that they were purchased by Sparks & Co. for the account of persons unknown to the plaintiff, and were placed in the name of the said McDonald, at the order and request of Sparks & Co., for the purpose of concealing the names of the real owners thereof; that these undisclosed owners are liable for the assessments on this stock; and that the defendants have been requested to disclose their names, but have refused. The plaintiff alleges he intends to bring suit against these unknown persons, who are the real owners of the stock, to recover the first installment; amounting to $2,750, as soon as their names are discovered. The original bill averred that Sparks & Co., or customers of theirs, were and are the owners of said stock, and prayed for both discovery and relief against them. An amendment was allowed in accordance with the facts above stated, and discovery alone is now requested.

The bill prays (1) that the defendants be compelled to answer the allegations of this bill and the interrogatories, but not under oath; (2) that they be ordered to disclose and discover the names and addresses of the person or persons for whose account the 1,100 shares were purchased that now stand in the name of the said McDonald; (3) for such other and further relief as the nature of the case may require.

A demurrer was filed by the defendants to the whole of the said

bill for the reasons: (1) That the American Alkali Company would have been estopped from questioning the title or ownership of demurrant to the shares of stock registered in his name, which title and ownership had been approved of by the American Alkali Company, through its officers, by the issuance to demurrant, McDonald, of the various certificates of stock referred to in the bill of complaint, under the corporate seal of the company. The complainant, who acquires no greater rights than the American Alkali Company ever possessed, is in no position to question or inquire into demurrant's right of ownership. (2) As the statutes of this state, and also of the United States, give the complainant the undoubted right to call and examine as a witness either demurrant or Sparks & Co., as codefendants, complainant needs no discovery, and the bill should be dismissed. (3) The complainant is not now, and would not have been prior to the statutes allowing parties defendant to be examined as witnesses, entitled to the discovery prayed for, merely in order to aid him in determining against whom to bring suit. (4) The averments in the bill show that the plaintiff is not in need of discovery, but that he is in the full possession of all the knowledge and information necessary for the purpose of bringing the actions at law referred to by him.

The first cause of demurrer raises the question as to whether the action of the officers of the company in accepting McDonald as the holder, together with the provisions in the charter of the alkali company, does not require the plaintiff to look solely to the person in whose name the stock was registered on the 16th day of September, 1901, for the payment of the installments. The charter provides that:

"Subscribers thereto shall not be liable for any balance of their subscription, excepting upon such shares as shall stand of record on the books of the company in their names at the time when any subsequent assessments or calls are made, but the holders of such shares of record on the books of the company at that time and they only shall be liable for the same."

It is contended that as the company saw fit to accept McDonald as the holder of record of the 1,100 shares of its stock, and inasmuch as its charter limits its right to recover assessments from such holders, there is no obligation upon any one else to pay the same, and that McDonald, by becoming the registered holder, has agreed to pay such assessment. The company, by accepting him as such, has agreed that he alone shall be liable.

The determination of this question is not necessary to a decision in this case. I will state, however, that this same question was raised in the case of American Alkali Company v. Bean & Company, 125 Fed. 823, tried in this court in October, 1903, before Dallas, Judge of the Circuit Court, who gave binding instructions for the plaintiff, and subsequently, in an opinion filed at the October sessions, 1903, on a motion for a new trial, held that this provision should be so interpreted as to limit its application to cases of bona fide changes of ownership, and that it was intended that the liability of subscribers should cease upon actual, and not merely nominal, transfers of the shares subscribed for, and that upon such actual transfer the new owner would become exclusively liable. This case was appealed to the Circuit Court of Appeals of this district, and has not yet been decided. 131 Fed. ——.

The second, third, and fourth grounds for demurrer will be considered together. They involve the determination of the question as to whether the plaintiffs, upon the facts in this case, can maintain a bill for discovery against the defendants, with no suit at law pending against them, merely in order to ascertain the names and addresses of alleged unknown owners of the stock, against whom they desire to bring suit, when the plaintiffs already know of two parties who are liable for the payment of these installments, and either of which can be called and examined as witnesses, and required to produce books and papers, under the laws of the United States. However, McDonald, for the purposes of this case, is to be considered as a straw man, against whom the plaintiff would be unable to collect the installments after judgment against him, but there is no allegation that Sparks & Co. are not entirely responsible for the payment of any judgment the plaintiffs might secure against them.

The plaintiff is not without a complete and adequate remedy at law. In fact, he would be in no better position if he were possessed of the information he seeks to discover. If he can recover against the unknown owners, he can at once, and with equal convenience, recover against Sparks & Co., whose responsibility is known. Can a court of equity, under these circumstances, be made the instrument by which plaintiff is permitted to fish out an assortment of parties, for the purpose of electing against which particular one he will bring his suit, when he already is confronted with a responsible firm, financially able to respond to any judgment that may be secured against them in an action at law? Even upon the ground of convenience and to avoid a multiplicity of suits, the plaintiff has no case, because Sparks & Co. are responsible, and it may turn out that the undiscovered persons are as irresponsible as McDonald, and, as a consequence, the information be valueless to the plaintiff. A suit at law against Sparks & Co. would enable the plaintiff to recover whatever he claims to be due, and in that proceeding, if any good purpose could be served, he would have a right to call both McDonald and Sparks & Co. as witnesses, and require them to produce books and papers, under Rev. St. § 724 [U. S. Comp. St. 1901, p. 583]; and, in the event of not being satisfied by that suit, the undiscovered owners could be called on to respond, if found to be financially able.

A number of cases are cited in support of the contention of the plaintiff that this bill should be sustained, and it is urged that Dixon v. Enoch, L. R. 13 Eq. 400, Post v. Toledo Railroad Company, 144 Mass. 341, 11 N. E. 540, 59 Am. Rep. 86, and Orr v. Diaper, 4 Chan. Div. 92, are cases directly in point. The Dixon Case was a bill filed against the printer of a newspaper, by a person libeled therein, to obtain the name of the publisher, in order that he might bring suit against him. In this case there was an enactment expressly authorizing a bill of discovery to be filed for the purpose of ascertaining the owners and publishers of newspapers in cases where they libeled a person. So that this bill was sustained by an express act of Parliament. In the Orr Case it appears that Orr was the manufacturer of cotton in England, which was shipped to various foreign countries under his trade-mark. Certain other firms in England, un-

known to Orr, used his trade-mark upon cotton which these unknown firms shipped in competition with Orr's cotton. The defendant shipowners carried this cotton, and were in possession of the information as to the names of these firms who were, in violation of law, using the trade-mark of Orr. The shipowners, however, may have been the innocent instruments through which Orr was injured. A bill for discovery was filed against the owners of the ship to compel discovery of the names of these merchants who were shipping in the defendants' vessel the goods bearing the trade-mark of the plaintiff, and the bill, on demurrer, was sustained. Had Orr been unable to discover the wrongdoer, he would have been possessed of a substantial and valuable right, without a remedy. I gather from reading the Post Case, that the defendant was a defunct Ohio corporation, against which creditors had secured a judgment, and whose officers and books of the company were in Boston, Mass.; the stockholders residing in Ohio, who, under the laws of Ohio, were responsible for the debts of the defunct corporation. The corporation itself was unable to respond to the demands of creditors, and a bill was filed in Massachusetts to compel the officers of the corporation to discover the names of the stockholders, in order to enforce the personal liability imposed upon them by the statutes of Ohio, and on demurrer the bill was sustained. These cases are entirely different from the one at bar.

Whether or not a pure bill of discovery, such as the one in the present case, could be maintained prior to the enactment of Rev. St. §§ 869, 724 [U. S. Comp. St. 1901, pp. 665, 583], is a question which will not be considered, as it is evident from a review of the decisions that the general trend of judicial discussion and thought in the federal courts is to the effect that such a bill is no longer necessary, and will be sustained only in exceptional cases.

In Heath v. Erie Railway Company, Fed. Cas. No. 6,307 (1872), it was held that:

"A bill of discovery is no longer necessary, in view of the act permitting parties to be witnesses, and that the theory and basis of a bill of discovery in equity, in aid of a defense in another suit, is that the court in which such other suit is pending has no means of compelling a discovery from the plaintiff therein of the facts material to the defense."

In Markley v. Mutual Insurance Company, Fed. Cas. No. 9,091 (1877) it was held:

"A bill for discovery in aid of a suit at law cannot be maintained in the absence of allegations that it is material that the discovery should be had, and that the court of law in which the case is pending cannot compel the discovery."

And the case of Heath v. Erie Railway Company is cited to sustain that decision.

In Drexel v. Burney, 14 Fed. 268, Chief Justice Wallace, of the Circuit Court, Southern District of New York (1882) said:

"Even if formerly the complainant might have been entitled to a discovery, now that the parties can be examined in the same case as other witnesses, at the instance of the adverse party, there is no necessity for such relief."

In Ex parte Boyd, 26 L. Ed. 1200 (1882). the Supreme Court was considering the question as to whether a certain provision in the New York Code requiring defendants in proceedings supplementary to execution to make discovery as to property was applicable in execution proceedings in the United States courts, and, in the discussion of this question, Justice Blatchford said:

"It follows, then, that although at one time courts of equity would entertain bills of discovery in aid of executions at law, because courts of law were not armed with adequate powers to execute their own process, yet, the minute their powers were sufficiently enlarged by competent authority to accomplish the same beneficial result, the jurisdiction in equity, if it did not cease, as unwarranted, would at least become inoperative and obsolete. A bill in equity to compel disclosures from a plaintiff or defendant of matters of fact peculiarly within his knowledge, essential to the maintenance of the legal rights of either in a pending suit at law, would scarcely be resorted to, unless under special circumstances, now, when parties are competent witnesses, and can be compelled to answer under oath all relevant interrogatories properly exhibited; nor to compel the production of books, deeds, or other documents important as instruments of evidence, when the court of law in which the suit is pending is authorized by summary proceedings to enforce the same right."

In United States v. McLaughlin (C. C.) 24 Fed. 823 (1885) Justice Sawyer says it is very doubtful whether a pure bill of discovery in an equity suit would lie at the present day, and further states that the Supreme Court, in Ex parte Boyd, intimates that at this day bills of discovery are not only valueless, but obsolete.

In Preston v. Smith (C. C.) 26 Fed. 884 (1888) Justice Brewer, now of the Supreme Court, said:

"It is claimed that the bill must be sustained because a discovery is sought. I do not understand that a bill can be sustained solely for the sake of discovery—at least, that is the general rule. Indeed, bills of discovery are rarely, of late, resorted to. They have fallen into a condition of innocuous desuetude."

In Rindskopf v. Platto (C. C.) 29 Fed. 130 (1886):

"A bill of discovery in aid of an execution at law cannot be maintained where full discovery may be compelled by examination of the adverse party as a witness in the suit at law."

In Patton v. Majors, 46 Fed. 210 (1891) it was held:

"Since, under the Revised Statutes of United States (section 869), either party may call the other as a witness, and, by subpoena duces tecum, require him to produce books and papers, the complainant cannot give jurisdiction to a court of equity, in a proceeding where his remedy is otherwise perfect at law, by asking for a discovery."

In Field v. Hastings, etc., Co. (C. C.) 65 Fed. 279 (1895) it was held:

"Since parties in interest have been made competent to give testimony as witnesses, bills for discovery have become obsolete, save in exceptional cases."

In Safford v. Ensign Mfg. Co., 120 Fed. 480, 56 C. C. A. 630 (1903) it was held:

"A federal court of equity is without jurisdiction of a suit in which discovery and relief are sought, but the only ground for equitable relief appears to be a discovery of evidence to be used in the enforcement of a purely legal demand, both because defendant is entitled to a jury trial on the merits, and

because a bill of discovery is rendered unnecessary by Rev. St. § 724, U. S. Comp. St. 1901, p. 583, under which plaintiffs may compel the production of the required evidence in an action at law."

The primary object of discovery was to obtain admission from a party which could be used as evidence against him, and the general rule was that a discovery could not be had from persons who had no interest in the litigation, and who could be called as witnesses. An exception, however, was made in the cases of corporations, where answer was made, not under oath, but under its corporate seal; and the practice was established of making one or more of its officers codefendants, and compelling them to make disclosures of such facts within their knowledge as the corporation, if a natural person, could have been compelled to disclose, although their answer could not be used as evidence against the corporation. It is clear, however, that courts do not compel discovery from persons who sustain no other relation to the contemplated litigation or to the subject of suit than that of witnesses, and it is also clear that a bill for discovery cannot be used to enable a plaintiff to fish for information of any cause of action he may have against other persons than the defendants. Twells v. Costen, 1 Pars. Eq. Cas. 373; Post v. Toledo Railroad Company, 144 Mass. 341, 11 N. E. 540, 59 Am. Rep. 86. But where a plaintiff has a cause of action against persons who are defined as a class by statute, and the names and residences of these persons are unknown, as in Post v. Toledo Railroad Company, supra, or where defendants have innocently become the instrument of the injury, which is the ground of a cause of action, and the names and residences of the persons offending are unknown to the plaintiff, and solely within the knowledge of the defendants, as in the case of Orr v. Diaper, supra, such a state of facts in either case is presented that a court of chancery was moved to compel a discovery.

The jurisdiction of courts of Pennsylvania as to bills of discovery, and the practice adopted and followed, were fully considered by President Judge King, of the court of common pleas of Philadelphia, in 1849, after the jurisdiction of these courts had been extended, empowering them to give such relief in matters of discovery of fact as was then possessed by courts of chancery. The chancery powers of courts in Pennsylvania have not been enlarged since that time, nor is there any decision in any of the courts overruling or modifying the principles established in Twells v. Costen, supra. This case is on all fours with the one under consideration, and the principles and discussion therein contained are applicable here.

Demurrer sustained and bill dismissed.