PERSHING v. THE CHICAGO, BURLINGTON & QUINCY RAILWAY
COMPANY.

71    561
121   602
123   353

71    561
124   671

71    561|
128   283

71    561|
129   326|

1. **Railroads**: INJURY TO PASSENGER: PRESUMPTION OF NEGLIGENCE: BURDEN OF PROOF. In an action against a railroad company for injury to a passenger caused by the derailment of a train and the breaking down of a bridge, the jury was properly instructed that the burden was on plaintiff to show that the injury was caused by the negligence of the defendant; but that, if he had established that the accident was attended by circumstances showing that it was caused by defective construction of the roadway, bridge, track, or the fastenings of the rails, at the point where the derailment occurred, or its train, or cars, or by the management or running of the train, this would raise a presumption of negligence, and would cast upon defendant the burden of proving that it was not caused by any negligence or want of skill on its part, either in the construction or maintenance of its roadway, track, or bridge, or in the management of its train, or the condition of its cars; but that this presumption extended only to those portions of the track, machinery or bridge which the circumstances of the accident indicated were possibly defective; and that it was not required to prove that nothing about its entire train and roadway was defective. In other words, the defendant in such case is not required to show how the accident occurred, and that it was free from *all* negligence in the matter, but it is sufficient if it shows its freedom from negligence as to the matter which the circumstances indicate to have been the cause of the accident and injury.

2. ———: DUTY TO PASSENGERS: DEGREE OF CARE REQUIRED. The rule which has been uniformly recognized and enforced in this state is, that the carrier, in the conduct and management of his business, is bound to exercise the highest degree of care and diligence for the convenience and safety of his passengers; and he is held liable for the slightest neglect. But there are certain dangers that are necessarily incident to travel by railway, and these the passenger assumes when he elects to adopt it; and in the application of the rule to railway companies, all that is meant is that they should use the highest degree of care that is reasonably consistent with the practical conduct of the business. (See opinion for authorities.)

3. ———: ———: SELECTION OF PLANS AND MATERIALS. In an action against a railroad company for an injury to a passenger caused by the derailment of a train and the breaking of a bridge, the court instructed the jury, in effect, that the degree of care required of defendant in the selection of plans and materials for its roadway, bridges and appliances was such as was exercised by the best and most skillfully and carefully managed railroads in the country, under like circumstances. *Held* that, if this instruction was vulnerable to the objection that it makes the very

practices which are called in question the law of the case, the objection was obviated by another instruction, drawn with special reference to the facts of the case, in which the jury were told, in effect, that defendant was bound, not only to select such plans and materials for the construction of its road and appliances as were in use by the best and most skillfully conducted roads of the country, but that such materials and plans must have been found sufficient by the other roads.

4. ————: ————: CONSTRUCTION OF BRIDGES. In such case, the jury was told that defendant "was not required to so construct its bridge that it would resist the unusual and extraordinary shock of a derailed train, running at regular speed, and striking it with great force." *Held* that this instruction afforded plaintiff no ground of complaint, when taken in connection with another, to the effect that defendant was required to take into account, in constructing and maintaining its bridges, the fact that accidents might occur in the operation of its road, and to construct its bridges with reference thereto; and that it was held to a very high degree of care in this respect.

*Appeal from Polk Circuit Court.*

SATURDAY, MARCH 19.

ON the eighth day of February, 1885, a passenger train on defendant's railway was derailed, as is supposed, by a broken rail, at a point near a bridge over a gully or ravine. When the train went upon the bridge, the wheels on one side passed outside of the guard-rail, and the bridge was broken down, and the car in which plaintiff's intestate was riding as a passenger was thrown into the gully or ravine, and she received injuries which caused her death. This action was brought for the recovery of the damages sustained by her estate. There was a verdict and judgment for defendant, and plaintiff appeals.

*Parsons, Perry & Sherman,* for appellant.

*J. W. Blythe, H. H. Trimble* and *Runnells & Walker,* for appellee.

REED, J.—It is alleged in the petition that the injury was caused by the negligence of the defendant, and that its negligence consisted (1) in the manner in which its track and

bridge were constructed and maintained, the latter being insufficient; and (2) in the manner in which the train was being run at the time of the accident.    The evidence is not contained in the abstract, but it is recited in the "bill of. exceptions" that plaintiff introduced evidence tending to prove the occurrence of the accident and injury, and that the deceased was not guilty of any contributory negligence, and that the accident was caused by the negligent manner in which the track and bridge were constructed and maintained, and the negligent manner in which the train was being run at the time, and by the insufficiency of the bridge, and that he then rested his cause; that the defendant thereupon introduced evidence tending to prove that its road, and said bridge, and its rolling stock, and its servants and agents, were in all respects such as were accepted by, and were in general use, and found to be sufficient and approved by, the best and most skillfully managed railroads of the country, doing a like business under like circumstances with it; and the selection of its materials, and the plan and construction of its roadway, track, bridges and rolling stock, and the selection of its employes, servants and agents, and the inspection and repairs of its road and machinery, and appliances connected with the operation of the road, were such as the best, most carefully, prudently and skillfully managed railroads in the country exercise and require, doing a like business, and under like circumstances; and that the bridge went down, and that the car in which the intestate was riding was thrown into the ravine, by reason of the derailment of the train, at a point 378 feet from the bridge; that the ties, rails and fastenings, and the ballast thereunder at that point, and between there and the bridge, were in all respects such as had been found sufficient by the most skillfully and prudently managed railroads of the country, doing a like business, under similar circumstances; that the same were, from time to time, and as frequently as by other railroads, inspected in the usual way of inspecting such appliances by the most

carefully and prudently managed railroads of the country, by an employe of competent skill and experience in such matters; and that the rails and joint fastenings appeared sound, and all their supports sound and secure; and that there were no flaws or defects visible that could have been discovered by such inspection; and that the shock or blow which caused the bridge to fall was of unusual and extraordinary violence, and that the bridge would not otherwise have gone down, and that the guard-rails on the bridge were such as were usually and customarily used by the most skillfully managed railroads of the country, under like circumstances.

In rebuttal, plaintiff introduced evidence tending to prove that the bridge was not sufficient, either in plan or construction; that the guard-rails were not of sufficient size, and were not properly placed or fastened; that the joint fastenings at the point at which the derailment occurred were insufficient, and were broken prior to the occurrence of the derailment; and that the break might have been discovered, by a careful and proper inspection, before the passage of the train.

The errors assigned all relate to the instructions given by the court to the jury.

I.  In the seventh, eighth and thirteenth instructions, the jury were told, in effect, that the burden was on plaintiff to. 1. RAILROADS: injury to passenger: presumption of negligence: burden of proof. show that the injury was caused by the negligence of the defendant; but that, if he had established that the accident was attended by circumstances showing that it was caused by the defective construction of the roadway, bridge, track, or the fastenings of the rail at the point where the derailment occurred, or its train or cars, or by the management or running of the train, this would raise a presumption of negligence, and would cast upon defendant the burden of proving that it was not caused by any negligence or want of skill on its part, either in the construction or maintenance of its roadway,

track or bridge, or in the management of the train, or the condition of the cars, but that this presumption extended only to those portions of the track, machinery or bridge which the circumstances of the accident indicated were possibly defective, and it was not required to prove that nothing about its entire train and roadway were defective; and that the burden cast upon it by proof of the happening of the accident, and the attending circumstances, only required it to show that, as to the matters which the circumstances indicated were the cause of the accident and injury, it had exercised due care; and that it was not required to satisfactorily explain the reason of the breaking of the rail, and the derailment of the train, and the breaking down of the bridge, but was only required to prove that these things did not occur through any negligence on its part.

The point urged by counsel for appellant is that the instructions are erroneous, in that they limit the burden imposed upon defendant by the evidence of the occurrence of the accident, and the attendant circumstances, to proof merely that it had not been negligent in respect to those matters which the circumstances indicated were the cause of the injury. Their position is that the presumption which arises upon proof of the happening of the accident is not a mere presumption of negligence as to some specific matter, but is a presumption of general negligence on the part of the carrier; or, in other words, they insist that the presumption is that he is legally liable for the injury, and that this presumption can be overcome only by proof that it was caused by inevitable accident, and that it follows necessarily from this that he must account for the accident, and show that he was free from all negligence in the matter.

The rule which casts the burden of proof on the carrier is a rule of evidence having its foundation in considerations of policy. It prescribes the quantum of proof which the passenger is required to produce in making out his case originally, and he is entitled to recover on that proof, unless the carrier

can overcome the presumption which arises under the rule from the facts proven. *Caldwell v. Steamboat Co.*, 47 N Y., 282; Thomp. Carr., 209.

The rule undoubtedly requires the carrier to prove his own freedom from negligence as to the cause of the injury. But that, it appears to us, is the doctrine of the instructions. The immediate cause of the injury to plaintiff's intestate was the breaking down of the bridge, and the consequent precipitation of the car into the ravine, and this was occasioned by the blow or concussion by the derailed train. In seeking for the cause of the injury, then, it became necessary to inquire as to the cause of the derailment of the train, and whether there was any defect in the track or roadway or bridge, or in the cars or machinery of the train, or any negligence in the management of it at the time; for the circumstances indicated unmistakably that the cause of the accident was to be found in some of these matters. They constituted the subject of the inquiry as to this branch of the case, and defendant very properly confined its proof, as to the diligence and care it had exercised, to that subject.

As there was nothing to indicate that any other matter could have contributed to the accident, it could not be required to show that it had been careful as to other matters. Such evidence would clearly have been immaterial, and the holding of the instructions is that it was not required to go beyond the cause of the inquiry in making proof of care and diligence. The holding that it was not required to give a satisfactory explanation of the cause of the breaking of the rail and bridge is supported by *Tuttle v. Chicago, R. I. & P. R'y Co.*, 48 Iowa, 236.

II. The following instructions were given by the circuit court: " It is a duty of a railway company, employed in transporting passengers, to do all that human care, vigilance and foresight can *reasonably* do, consistent with the mode of conveyance and the practical operation of the road, in providing

2. ——: duty to passengers: degree of care required.

safe coaches, machinery, tracks, rails, angle-bars, or splices, bridges and roadway, and in the conduct and management of its trains for the safety of its passengers, and to keep the same in good repair. The utmost degree of care which the human mind is capable of inventing or producing is not required, but the highest degree of care, vigilance and foresight that is reasonably practicable in the conduct and management of its road and business is required. * * * Common carriers of passengers are held to the very highest degree of care and prudence that human care, vigilance and foresight could *reasonably* do, which is consistent with the practical operation of their road, and the transaction of their business; yet they are not absolute insurers of the safety of their passengers; and if you find that the defendant exercised all reasonably practical care, diligence and skill in the construction, preservation, inspection and repairs of its road-bed, bridges, track, rails, angle-bars or splices, in the management and operation of its road, and of the train, at the time of the accident alleged and shown to have occurred, and that the accident could not have been prevented by the use of the utmost practical care, diligence and skill consistent with the practical operation of its road, and the transaction of its business, then plaintiff cannot recover in this action."

The rule which has been uniformly recognized and enforced in this state is that the carrier, in the conduct and manage- of his business, and as to all the appliances made use of in the business, is bound to exercise the highest degree of care and diligence for the convenience and safety of his passengers, and he is held liable for the slightest neglect. *Frink v. Coe*, 4 G. Green, 555; *Sales v. Western Stage Co.*, 4 Iowa, 547; *Bonce v. Dubuque St. R'y Co.*, 53 Id., 278; *Kellow v. Central Iowa R'y Co.*, 68 Id., 470. It is insisted that the instructions are in conflict with this rule. The position of counsel is that, by the use of the words *reasonable, reasonably practicable,* and *reasonably practical* in the instructions,

the care for the safety of the passenger required of the car-
rier is lowered, and he is required to exercise reasonable or
ordinary care only.   It will be observed, however, that these
words, as they are used in the instructions, while they to
some extent limit the degree of care required of the carrier,
have special reference to the practical operation of the rail-
road, and the conduct of the business.   When the instruc-
tions are scrutinized, it will be found that the doctrine
announced by them is that defendant was bound to exercise
the highest degree of care and diligence which was reason-
ably consistent with the practical operation of its railroad,
and the conducting of its business; and this is right.   It is
doubtless true that precautions could be used in the construc-
tion and operation of railroads that would prevent many of
the accidents which occur as they are constructed and oper-
ated.

It sometimes happens that a derailed train is precipitated
from a high embankment, and the lives of its passengers
endangered or destroyed.   Accidents of that character could
be avoided by constructing all railroad embankments of
such a width that a derailed train or car would come to a
stop before reaching the declivity.   But this would add
immensely to the cost of constructing such improvements,
and, if required, would in many cases prevent their construc-
tion entirely.   If passenger trains were run at the rate of
ten miles per hour, instead of from twenty-five to forty
miles, it is probable that all danger of derailment would be
avoided.   But railroad companies could not reasonably be
required to adopt that rate of speed.   Their roads are con-
structed with a view to rapid transit, and the traveling public
would not tolerate the running of trains at that low speed.
When it is said that they are held to the highest degree of
care and diligence for the safety of their passengers, it is not
meant that they are required to use every possible precau-
tion, for that, in many instances, would defeat the very
objects of their employment.   There are certain dangers

that are necessarily incident to that mode of travel, and these the passenger assumes when he elects to adopt it. But all that is meant is that they should use the highest degree of care that is reasonably consistent with the practical conduct of the business, and that is the doctrine of the instructions, and it is abundantly sustained by the authorities. *Indianapolis & St. L. R'y Co. v. Horst*, 93 U. S., 291; *Dunn v. Grand Trunk R. R.*, 58 Me., 187; *Hegeman v. Western R. R.*, 13 N. Y., 9; *Kansas Pacific R. R. v. Miller*, 2 Colo., 442; Wood, R. R., 1049–1054.

III. The eleventh, twelfth and fourteenth instructions given by the court are as follows:

3. ——: ——: "The degree of care required of defendant in selection of plans and materials. the selection of its materials, the plan and construction of its roadway, track, bridges and rolling stock, in the selection of its employes, servants and agents, and in the inspection and repairs of its road, and the machinery and appliances connected with the operation of the same, is such as the best, most carefully, prudently and skillfully managed railroads of the country exercise and require, doing a like business, and under like circumstances.

"The high degree of care hereinbefore referred to, and required of defendant, embraces its roadway, track, bridges and rolling stock, and the selection of its employes, servants and agents. In supplying materials for and in constructing its roadway, track, bridges and rolling stock, it was required to exercise that high degree of care to see that materials used were amply sufficient, and of such quality, size, pattern, as were accepted by and in general use, *and found to be sufficient, and approved* by the best and most skillfully managed railroads of the country, doing a like business with defendant. In the selection of train-men, and in the management of its train, it was bound to exercise that high degree of care, and to provide men of sufficient experience, skill and prudence to run such train safely, as far as was practicable; and it was bound, also, in like manner, to see that, in the actual

management of the train at the time of the accident, the train-men exercised a like degree of care and skill in managing and running the train safely in all respects, so as to avoid injury to the passengers. If defendant failed in any of these respects, and such failure was the cause of the injury complained of, it was negligent, and is liable.

"If you find that the rails which were broken were made by a manufacturer of good repute, were made upon the approved method of manufacturing rails, were properly tested by the proper known and usually applied tests then in praccical use, and had been on the track for several years, and had successfully stood the strain of numerous passing trains without in any manner affecting their quality or strength, so far as could be seen by proper examination, carefully and skilfully made; if, at the time of the accident, they were placed and lying securely on sound ties, with good angle-bars or splices at the ends, with sufficient ballast under the ties, with all their connections and supports well adjusted; if they had been subjected to a daily inspection in the most approved and customary way of inspecting such appliances by the most careful and best managed railroads in the country, by some servant of competent skill and experience in such matters, and said rails appeared then sound, and all these connections and supports sound and secure; and if there were no flaws or defects visible, or that could have been discovered by such approved and customary inspection, made in the manner hereinbefore explained,—then the defendant was not negligent with reference to said rails."

Some of the members of the court think that the eleventh instruction is erroneous, but we unite in the conclusion that, if it should be conceded to be erroneous, the plaintiff could not have been prejudiced by it. The doctrine of the instruction is that the degree of care required of defendant in the selection of plans and materials for its roadway, bridges and appliances was such as was exercised by the best and most skillfully and carefully managed railroads in the country, under

like circumstances. The objection urged against it is that it treats the practices of the class of railroads named, in the matters in question, as affording an absolute standard of duty as to those matters, thus, in effect, making the very practices which are called in question the law of the case. We admit the force of the objection. But the twelfth instruction was drawn with special reference to the facts of the case, and in it the jury were told, in effect, that defendant was bound, not only to select such plans and material for the construction of its road and appliances as were in use by the best and most skillfully conducted roads of the country, but that such materials and plans must have been found sufficient by the other roads. This is clearly right. When a plan of construction, and the materials made use of, have been found by actual experience to be sufficient and safe, other roads, whose business is to be carried on under like circumstances, are warranted in adopting them. To hold otherwise would be to hold that railroad companies, in the construction and operation of their roads, could not avail themselves of the experience of others, and that the construction and operation of every road must, to a great extent, be a matter of experiment. With this rule distinctly laid down as applicable to the facts of the case, we think the jury could not have been misled by the eleventh instruction, conceding that it is erroneous. This concession, however, must be understood as being made only for the purpose of the argument, for a majority of the court are of the opinion that the instruction is not erroneous. We think, also, that the fourteenth instruction is correct.

IV. In another instruction the jury were told that defendant " was not required to so construct its bridge that 4. ——: ——: it would resist an unusual and extraordinary construction of bridges. shock of a derailed train, running at regular speed, and striking it with great force." After the jury had been considering the case for some time, they were again brought into court, and the court gave them further instruc-

tions on that subject, which very materially modified the one quoted above. In the additional instructions they were told, in effect, that the defendant was required to take into account, in constructing and maintaining its bridges, the fact that accidents might occur in the operation of its road, and to construct its bridges with reference thereto; and that it was held to a very high degree of care in that respect. As thus modified, the instruction quoted affords plaintiff no just ground of complaint.

We have found no ground in the record upon which we think we ought to disturb the judgment, and it well be

AFFIRMED.