# WASHINGTON AND GEORGETOWN RAILROAD CO.

## *v.*

## GRANT.

STREET RAILWAYS; NOTICE; NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE; PLEADING AND PRACTICE; VARIANCE.

1. If a street car stops at a place where passengers may get off and on, although not a regular stopping place, it is the duty of those in charge of the car to hold it a sufficient time for passengers, by the exercise of reasonable diligence, to alight or get on in safety, and must in any event see and know that no passenger is in the act of alighting, or is in a position otherwise which would be rendered perilous by the motion of the car when again put in motion; and if an employee fail in his duty in any of these respects, the company employer is liable for injuries resulting to a passenger.

2. Where there is conflict of evidence in such a case as to whether there was negligence on the part of the railroad employee, the question is one for the jury, and whether the testimony preponderates the one way or the other is also exclusively for the jury and not for the court to decide.

3. Actual or express notice by a passenger to the conductor of the car of an intention to alight is not required, if the conductor knew that the passenger was in the act of alighting, or if he did not know but ought to have known the fact, under all of the circumstances, the company would be liable; and an instruction that in such a case the passenger as a matter of law cannot recover if he failed to give notice to the conductor, is properly refused.

4. As a general rule, it is only where the circumstances of a case are such that the standard and measure of duty are fixed and defined by law and are the same under all circumstances, or where the facts are indisputable, and but one reasonable inference can be drawn from them, that the court can declare as matter of law that there is such contributory negligence as will defeat an action; ordinarily the question of negligence is a question of fact for the jury.

5. A variance between the allegations of a declaration and the proof, to be material, must be such as could have misled or operated to the surprise of the defendant.

No. 664. Submitted April 15, 1897. Decided May 25, 1897.

HEARING on an appeal by the defendant from the judg-

ment on verdict in favor of the plaintiff in an action to recover damages for personal injury. *Affirmed.*

The COURT in its opinion stated the case as follows:

This action was brought to recover for personal injuries received by the plaintiff, Leonidas W. Grant, occasioned, as alleged, by the negligence of the agents and servants of the defendant, the Washington and Georgetown Railroad Company, a street railway company in the city of Washington.

The facts of the case, as they are stated, appear to be these: On the 19th of January, 1895, the plaintiff took a Fourteenth street car at Third street and Pennsylvania avenue, northwest, on his way to the Navy Department, where he was employed; that a Mr. Hall, also employed in the same department, and himself were the only passengers on the car at the time of the accident; that, after turning into Fifteenth street from Pennsylvania avenue, the car stopped, then started again, and began to slow up as it approached the transfer station at G street; that, upon its so slowing up, both the plaintiff and Hall arose from their seats, and Hall passed out of the front end of the car; and the plaintiff through the rear end out to the platform; that plaintiff stepped on that part of the platform next to the step that led down from it, and stood there waiting until the car came to a stop, when he stepped to the ground; that the car stopped on Fifteenth street, just south of G street, opposite the Riggs House, at what he supposed was the regular stopping place, and that he waited on the platform until it stopped, holding, according to his recollection, the rail on the body of the car; that, just as he made the step, he felt himself jerked, and remembered nothing more until he found himself crawling about on the ground; that every time he would get up, he would fall again, until a young man came to his assistance and carried him into the Riggs House, from which he was taken home in a carriage. His injuries are described as being very severe, and his loss

considerable. The plaintiff further testified, on cross-examination, that he supposed the place where the car stopped to be the regular stopping place, because he saw the flagman, the transfer station, and the general surroundings; that his recollection of the manner in which the accident occurred is indistinct, such indistinctness of recollection beginning at the point of stepping from the platform ; that he got down on the step just about the time the car stopped; that the conductor was standing right near him upon the rear platform, when he came out upon it; and when he stepped from the platform to the step, the car was slowing up, and he stood ready to step off when it stopped ; that he supposed the jerk took place after he got on the street, and while he had hold of the handle-holt; that, just as he stepped to the pavement, he felt the jerk forward and fell; that the car jerked him just as he stepped down; that he did not think it was necessary to notify the conductor that he was going to get off; that he supposed it was the regular stopping place, and when the car stopped he got off, as he always did, without notifying the conductor; that the conductor was standing there on the platform as the plaintiff descended the steps. This is the full and particular account of the occurrence as given by the plaintiff himself. There were other witnesses who testified on his behalf, and whose testimony tended to corroborate his account of the accident. The evidence on the part of the defendant, given by the conductor, the gripman, and the station agent, was in striking conflict with that of the plaintiff in many particulars. It was testified by one of the witnesses for the plaintiff that the car stopped on the south side of G street, in front of the Riggs House, on this occasion, because, as the car approached G street, there was an express wagon passing on that street, just in front of the car; and by another witness for the plaintiff, it was proved that the train stopped in front of the Riggs House on that occasion, because another and preceding train of the defendant had stopped and was stand-

ing in front of the transfer station on the north side of G street.

The witnesses for the defendant proved that the car producing the accident made no stop in front of the Riggs House, but passed it at the regular rate of speed; that there was no train ahead of the train on which the accident is supposed to have occurred, stopping at the transfer station, and that no express wagon crossed in front of the car as it approached G street. The conductor testified that after turning into Fifteenth street, the man who had come out of the grip car back into the coach came out on the rear platform and stood alongside of him; that he watched him closely until after the train passed F street, and, as the man said nothing about wanting to get off, he paid no further attention to him; that as the train neared G street his (the conductor's) attention was directed to the adjoining track, and when the train stopped at the transfer station he looked around, missed the man who had been standing alongside of him, and saw him standing up in the street, in front of the Riggs House, brushing his clothing. The transfer agent of the defendant testified that the regular stopping place for passengers on trains bound north on Fifteenth street was at the transfer station north of G street; and that passengers who got off in front of the Riggs House would not be entitled to transfers; though both he and the conductor proved that if a preceding train occupied the tracks at the transfer station on the north side of G street, the succeeding train coming up would stop in front of the Riggs House; and if a passenger got off while the train was so stopped, he would be entitled to a transfer; and further, that if the grip car and two trailers were stopping at the regular stopping place, the rear end of the coach would extend to the north building line of G street; that it does not frequently happen that trains stop below G street, because another train is at the regular stopping place; that this does happen when a forward car has been detained in some way; and that very often a wagon crosses the track and detains the cars.

Upon the whole evidence, both parties asked instructions to the jury; and all the prayers propounded by the plaintiff and several of those on the part of the defendant were granted, while several of the prayers offered by the defendant were refused, and among the latter was one that asked the jury to be instructed that there was no evidence tending to prove negligence on the part of the defendant, as alleged, and, therefore, the plaintiff was not entitled to recover. The defendant excepted to the granting of the plaintiff's prayers, and to the refusal to grant those of the defendant which were rejected; and the defendant also excepted to certain parts of the general charge of the court to the jury.

The errors assigned by the appellant, on the exceptions taken, are reduced to three, to wit:

1st. That the court erred in refusing to instruct the jury that there was no proof of negligence on the part of the defendant to entitle the plaintiff to recover.

2d. In refusing to instruct the jury that, *as matter of law*, the conductor on the car was entitled to notice of the desire of the plaintiff to get off the car in front of the Riggs House, if that place was found not to be the regular stopping place for passengers to get off.

3d. In refusing to instruct the jury that the plaintiff's right to recover was limited to the allegations of his declaration.

*Mr. Enoch Totten, Mr. W. D. Davidge* and *Mr. J. S. Flannery* for the appellant.

*Mr. J. J. Darlington* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

1. As to the first of these supposed errors, we think there was no sufficient ground for the assignment. It was a fact made quite clear by the testimony for the plaintiff that the car came to a full stop on the south side of G street, opposite the Riggs House; and though but a short distance from the

transfer station on the north side of that street, and not at the usual place of stopping, there must have been some existing cause for the stop. It was testified to as a fact, and conceded by the defendant's prayer, that when the car did so stop, for any cause, opposite the Riggs House, passengers would get off and on the waiting train. This practice was, of course, known to the defendant, as it was proved by its own witnesses. It was the duty, therefore, of the employees on the train to keep a lookout and be on their guard in respect to passengers who might get off or on the train, when it had come to such stop before reaching the regular station. The plaintiff was observed by the conductor to get up from his seat in the car, and come to the rear platform, where the conductor was standing as the train approached G street. When the car drew up in front of the Riggs House, the plaintiff was standing beside the conductor, and ready to step down so soon as the car stopped. This was a fact tending to show knowledge on the part of the conductor, of the design and attempt of the plaintiff to get off the car; at least, it was a circumstance to be considered by the jury. Negligence is not required to be established by positive and direct evidence, but it may be inferred from circumstantial proof. And if the conductor was standing on the rear platform of the car when the plaintiff attempted to get off, or had knowledge of the attempt of the plaintiff to get off the car at that place, or had reasonable ground of belief that he intended or was in the act of getting off at that place before the car stopped, it was his duty to see to it that the plaintiff had reasonable time, with due diligence on his part, to get off in safety; that is to say, that there was no such negligence on the part of those in charge of the car as would tend to produce injury to the plaintiff while so getting off the car. It is a settled principle that if a passenger voluntarily alights from a street car in motion or when at a place or in a position where passengers are not *intended or expected to get off the car*, the passenger so getting off or on the car takes

the risk of injury by the sudden starting up of the car, and the employees who so start the car are not negligent, *if they are ignorant that the passenger is so alighting from or getting on the car.* *Nichols* v. *Middlesex R. Co.*, 106 Mass. 463. But it is otherwise if such employees have knowledge, or reasonable ground to suppose, that the passenger is in the act of getting off the car at the time of so starting it up. If a street car stops to take on or let off passengers, or stops at a place where passengers may get off or on, though not a regular stopping place, those in charge of the car must wait a sufficient length of time to enable passengers attempting to get off or on, to alight or get on in safety, by the exercise of reasonable diligence; and must, in any event, see and know that no passenger is in the act of alighting, or is otherwise in position which would be rendered perilous by the motion of the car when again put in motion. If the employees fail in any of these respects and injuries result to the passengers from such failure, the company employer is liable. *Birmingham Union R. Co.* v. *Smith*, 90 Ala. 60; *Poulin* v. *Broadway R. Co.*, 61 N. Y. 620; *Nichols* v. *Sixth Avenue R. Co.*, 38 N. Y. 131; *Chicago City R. Co.* v. *Mumford*, 97 Ill. 560; *Werbowlisky* v. *Fort Wayne and Elmwood R. Co.*, 86 Mich. 236.

We are of opinion that the court below was entirely right in refusing to instruct the jury that there was no evidence of negligence on the part of the defendant to be considered by the jury. There was evidence on the part of the plaintiff, and a conflict of evidence produced by the evidence on the part of the defendant, and that made it necessary that the question should be submitted to the jury. The question of the conflict of evidence could only be decided by the jury. Whether the question on the facts preponderated the one way or the other, was not a question for the court to decide, but exclusively for the jury.

2d. With respect to the second assignment of error, we have already stated the facts in evidence, and the instruc-

tions thereon as matter of fact for the jury; and we think the court below was unquestionably right in refusing to instruct the jury, *as matter of law*, that if the plaintiff got off the car opposite the Riggs House without giving notice to the conductor of his intention to get off, or that the conductor was not aware of the fact of the plaintiff's getting off at that place, the plaintiff could not recover. Such an instruction, in view of all the evidence in the cause, would have been misleading. Actual or express notice was not required to be given to the conductor, assuming the evidence to be true; and the question was not so much as to whether the conductor did in fact know that the plaintiff was getting off the car, but, if he did not know, whether he ought to have known the fact, under the circumstances of the case. This question as matter of fact was fully submitted to the jury; and upon its determination was made to depend the liability or exoneration of the defendant. If the jury found, as we must suppose they did, under the instruction given them, that the conductor had notice, or reasonable ground to suppose, that the plaintiff was about getting off the car at the place where the accident occurred, he was bound to see that reasonable time was allowed to enable the plaintiff to get off safely. This, under the evidence, was purely a question of fact for the jury. The cases are but few where the court can undertake to decide upon the evidence, *as matter of law*, that there is such contributory negligence as will preclude the plaintiff from recovery. As a general principle, it is only where the circumstances of the case are such that the standard and measure of duty are fixed and defined by law, and are the same under all circumstances; or where the facts are undisputed, and but one reasonable inference can be drawn from them, that the court can interpose and declare, *as matter of law*, that there is such contributory negligence as will defeat the action of the plaintiff. As a general proposition, a question of negligence is a question of fact, and

must be submitted to the jury; and that was very fully and fairly done in this case.

3d. The third and last assignment of error relates to the supposed variance between the allegations of the declaration and the proof; or, in other words, that the proof fails to support the allegations made in the declaration as to the place of stopping the car and the object of the plaintiff in getting off at that place. But we perceive no material variance; certainly none that could have misled the defendant, or operated to its surprise. The proof by the defendant's witnesses showed that it was a habit or custom of the defendant to stop its cars south of G street, opposite the Riggs House, whenever the regular stopping place at the station north of G street happened to be occupied by a preceding train, or for any cause the train could not get to the station. That the plaintiff got off the car on the south side of G street, to go to the place of his employment, and not to obtain a transfer to another car, as alleged, would seem to be wholly immaterial, and produced no such variance as could be prejudicial to the defendant.

Upon the whole evidence, the jury were very fully and fairly instructed, and the case was fully covered, and all the questions that could be fairly raised upon the evidence were presented and explained to the jury.

Finding no error, the judgment must be affirmed; and it is so ordered.                    *Judgment Affirmed.*