# CHALVET v. HUSTON.

TRIAL; EVIDENCE; LOST INSTRUMENT; GIFTS; DIRECTION OF VERDICT.

1. The testimony of a man as to the contents of a lost letter to his wife from another, written in a foreign language unintelligible to the

husband, and read to him by his wife, since deceased, is admissible as the best evidence obtainable.

2. The weight of the testimony of a witness as to the contents of a lost letter read to him is for the determination of the jury.

3. A verdict should not be directed for the defendant, a relative of the plaintiff's wife, in an action to recover money alleged to have been loaned him by plaintiff, where there is evidence tending to show that the defendant, whose home was encumbered, wrote the plaintiff for a loan, and it is clearly established that the plaintiff, who was under no obligations to the defendant, sent the money, which the defendant and his wife received, and it is evident that the defendant knew that it was not a gift, and that the plaintiff did not so understand it, although the money was not actually used in liquidating the encumbrance, in view of the rule that a verdict should be directed only where, accepting as true every fact offered in evidence by the plaintiff, with every reasonable inference therefrom, a conclusion utterly opposed to the plaintiff's right to recover would be reached by all fair-minded men. (Citing *City & Suburban R. Co.* v. *Cooper*, 32 App. D. C. 550.)

No. 2704. Submitted December 9, 1914. Decided January 4, 1915.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on a verdict for the defendant directed by the Court, in an action to recover a certain amount alleged to have been loaned by the plaintiff to the defendant. *Reversed.*

The COURT in the opinion stated the facts as follows:

Appeal from a judgment upon a directed verdict for the defendant, William D. Huston, appellee here, in an action for the recovery of $1,935 alleged to have been loaned the defendant by Peter Chalvet the plaintiff.

The plaintiff's evidence, in the form of a deposition, was substantially as follows: He was seventy-two years old, and had lived in Olivenheim, California, for thirty-five years. His wife, Minnie Chalvet, had been married before. She was of German descent, and could read and write the German language, but plaintiff could not. Mrs. Chalvet had several chil-

dren by her first marriage, one being the wife of the defendant. This daughter and her husband lived at Garrett Park, Maryland, where they owned a small home, for which the plaintiff understood they paid $3,000, and upon which there was an encumbrance of about $2,000. When plaintiff married Mrs. Chalvet he owned a ranch of 320 acres, but she had no property. She died in May, 1911.

The plaintiff offered to prove, through his deposition, that in 1910 Mrs. Chalvet received a letter from the Hustons, saying that they wished to borrow from the plaintiff $2,100 to liquidate the mortgage on their home, and that they would give a new mortgage to secure the loan. This letter was written in German, but was read to the plaintiff by Mrs. Chalvet, and was finally lost. The court, over the objection and exception of the defendant, excluded the evidence.

It further appeared that on October 7, 1910, plaintiff, with money which belonged to him, purchased a draft payable to his order for $2,000, which he indorsed to Mrs. Chalvet. In addition he gave her $100 in cash. Taking the draft and money, Mrs. Chalvet came East and went to the home of the Hustons, in Garrett Park, where she remained about three months, when she returned to her home in California. She then told the plaintiff that the defendant would not give her a mortgage; that he, the defendant, "said that if he gave the mortgage, and the plaintiff and his wife should die, then Mrs. Chalvet's other children would come in and get this note and mortgage, and might foreclose the mortgage, and he, Huston, would thereby lose the $1,500 he had already paid on the place." The $2,000 draft was introduced in evidence, and showed that it had been indorsed by Mrs. Chalvet to the defendant. On December 15, 1910, while Mrs. Chalvet was at the Hustons, the defendant wrote a letter in English to the plaintiff, which was signed "Jenny and Will Huston," and in which the defendant, among other things, said: "We made out the mortgage on our house just as mother wanted it, so you see that everything is alright." On February 5, 1911, after Mrs. Chalvet's return to California, the defendant sent her a letter in German,

in which he said: "We hope that you all do very well. You may tell to Pet, that we will do the right thing. You need not be worried about it."

The defendant testified that the $2,100 was given his wife by Mrs. Chalvet; and that he and his wife "agreed to give Mrs. Chalvet a home with them as long as she lived, as well as provide a home for her husband, Mr. Peter Chalvet, the plaintiff, in this case, he to pay board for himself at the rate of $30 per month;" and that to secure the carrying out of this agreement as to Mrs. Chalvet the defendant and his wife executed a mortgage which provided that in consideration of the payment of $2,100 the Hustons would support, maintain, and provide a comfortable home for Mrs. Chalvet during her life. The mortgage contained no power of sale, and was to cease and determine upon the death of Mrs. Chalvet, who retained it in her possession without recording it until she was about to return to California, when she gave it back to the defendant. The money secured from the draft finally found its way into the joint bank account of the Hustons, and Mrs. Huston used several hundred dollars of it to purchase a piano, furniture, and various household necessities. At a later date there was deposited the balance of $1,100 in her individual account. The defendant further testified that in April, 1911, he secured a loan, through other sources, of $1,800 upon his property for the purposes of taking up the existing mortgage thereon. There was some further evidence tending to show that Mrs. Chalvet had expressed the intent to give Mrs. Huston the money which she brought East.

*Mr. Samuel Herrick, Mr. Joseph W. Cox,* and *Mr. Joseph T. Sherrier* for the appellant.

*Mr. Claude W. Owen* and *Mr. George C. Shinn* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

It was error to exclude the testimony of the plaintiff as to

the contents of the lost letter which his wife had read to him. *Gulliford* v. *McQuillen,* 75 Kan. 454, 89 Pac. 927; *Ryland* v. *Heney,* 130 Cal. 426, 62 Pac. 616. The letter having been lost, and the person who read it to the plaintiff having died, the testimony offered was the best evidence obtainable. The weight of such evidence, however, is for the determination of the jury. *Luster* v. *Blackwell,* 128 Ala. 143, 30 So. 663; *Apperson* v. *Doway,* 82 Va. 776, 1 S. E. 105.

Having in mind the oft-repeated rule that a verdict should be directed only where, accepting as true every fact offered in evidence by the plaintiff, with every reasonable inference deducible therefrom, a conclusion utterly opposed to plaintiff's right to recover would be reached by all fair-minded men. (*City & Suburban R. Co.* v. *Cooper,* 32 App. D. C. 550), we think the court erred in directing a verdict in the present case. There was evidence, as we have seen, tending to show that the defendant, whose home was encumbered, wrote the plaintiff for a loan. It is clearly established that the plaintiff, who was under no obligations to the defendant, sent $2,100 of his, the plaintiff's, own funds, which the defendant and his wife received. That the defendant knew that this was not a gift, and knew that the plaintiff did not so understand it, is evident from his own letter to the plaintiff of December 15, 1910, wherein he informed the plaintiff that "we made out the mortgage on our house just as mother wanted it, so you see that every thing is alright." That this money was not actually used in liquidating the encumbrance on defendant's home is merely a circumstance to be taken into consideration, with all the other facts and circumstances of the case. It was for the jury to say whether the failure of the defendant thus to apply the money was not a part of a scheme to appropriate it, and it was equally for the jury to say under the evidence whether the defendant did not really receive the benefit of it.

Judgment reversed, with costs, and cause remanded for a new trial.                    *Reversed and remanded.*