## WALFORD v. McNEILL.
### No. 7074.

United States Court of Appeals for the District of Columbia.

Decided Oct. 10, 1938.

Mark P. Friedlander and Robert I. Silverman, both of Washington, D. C., for appellant.

Kelly Kash and Bradford Ross, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and EDGERTON and VINSON, Associate Justices.

VINSON, Associate Justice.

The appellant, a real estate broker, alleged in her declaration filed in the District Court that she entered into a contract with the appellee to make adjustment of, and to seek the collection of sums of money due under various real estate contracts which the appellee held for sales of

lots in Montrose, Pennsylvania, and to look after his interests generally as to them, for which he agreed to pay her the sum of $1,500; that she faithfully and fully performed her part of the agreement in every particular and received only $285.18, leaving unpaid on the balance of the contract due her $1,214.82.

The appellee in his plea stated that he never employed appellant in the manner set out in the declaration; that he entered into the contract with the appellant and Miss Mae Helm on behalf of the Montrose Land Company, a corporation, which fact was well known to them in which they were employed to collect and readjust $6,000 or more of suspended contracts then owned by the corporation upon certain real estate sales in Montrose, Pennsylvania, agreeing, on the corporation's behalf, to pay them the sum of 25 per centum upon all monies so collected. A replication was filed denying and joining issue with the averments of the plea.

At the close of appellant's case appellee asked for a directed verdict which was refused. He repeated his request at the close of the whole case which likewise was refused. However, while the jury was deliberating the case, they were recalled by the judge and directed to return a verdict for appellee. This action of the court below is assigned as error, and presents the sole question in this appeal.

It is well-settled that on a motion for a directed verdict, the evidence, together with all inferences fairly deducible therefrom, must be construed most favorably to the plaintiff. It is equally well-settled "Issues that depend on the credibility of witnesses, and the effect or weight of evidence, are to be decided by the jury." Gunning v. Cooley, 281 U.S. 90, 94, 50 S. Ct. 231, 233, 74 L.Ed. 720. In this case the court also stated: "And in determining a motion of either party for a peremptory instruction, the court assumes that the evidence for the opposing party proves all that it reasonably may be found sufficient to establish, and that from such facts there should be drawn in favor of the latter all the inferences that fairly are deducible from them. Texas & Pacific Ry. Co. v. Cox, 145 U.S. 593, 606, 12 S.Ct. 905, 36 L.Ed. 829; Gardner v. Michigan Central Railroad Co., 150 U.S. 349, 360, 14 S.Ct. 140, 37 L.Ed. 1107; Baltimore & Ohio R. Co. v. Groeger, 266 U.S. 521, 524, 527, 45 S.Ct. 169, 69 L.Ed. 419. Where

uncertainty as to the existence of negligence arises from a conflict in the testimony or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them, the question is not one of law but of fact to be settled by the jury. Richmond & Danville Railroad Co. v. Powers, 149 U.S. 43, 45, 13 S.Ct. 748, 37 L.Ed. 642."

The question for the consideration of the court was whether the evidence submitted was sufficient to authorize the jury in finding in favor of the contract set up by appellant. If the evidence is not sufficient to warrant a recovery, it is the duty of the court to instruct the jury accordingly. The rule is, "that in every case, before the evidence is left to the jury there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L.Ed. 867; Pleasants v. Fant, 22 Wall. 116, 120, 22 L.Ed. 780. See, also, Herbert v. Butler, 97 U.S. 319, 24 L.Ed. 958; Bowditch v. Boston, 101 U.S. 16, 25 L.Ed. 980; Southern Railway Co. v. Walters, 284 U.S. 190, 52 S.Ct. 58, 76 L.Ed. 239; Schwartzman v. Lloyd, 65 App.D.C. 216, 82 F.2d 822; Old Dominion Stages v. Connor, 67 App.D.C. 158, 90 F.2d 403; Jackson v. Capital Transit Company, 69 App.D.C. 147, 99 F.2d 380, decided July 25, 1938.

The testimony construed most favorably for appellant was in effect: That the appellee stated he had developed the subdivision of which he was sole owner and had sold many of the lots; that considerable confusion existed with the purchasers because of the death of the agent in immediate charge of the sales and he desired her to straighten the matter out; that he employed her to ascertain and interview persons who had undertaken to purchase the lots and induce them to revive their contracts by making payments thereon, and also to use her efforts to create good will among the purchasers, which would be helpful to the sales campaign of the remaining lots contemplated to be made through a broker at Reading, Pennsylvania; that on May 1, 1933 appellee presented her with a list of purchasers with the amounts claimed to be owing by them aggregating $7,500, together with a power

of attorney signed by appellee individually showing her authority to collect the money and adjust these accounts; that she worked from May 1933 to the spring of 1934 interviewing some 200 purchasers and reported fully to the appellee at which latter time he terminated the contract; that she collected the sum of $1,190.18 of which $955 was transmitted to appellee, $235.18 retained by her, which, with $50 received from appellee, made a credit of $285.18 to be applied against the $1,500 agreed upon for her services. Appellant submitted in evidence her letter of May 15th addressed to the appellee individually, which contained the following language:

"While I agree with you that there must be a great number of incomplete contracts, a number of which I believe can be collected, I cannot see that there would be enough in it to give me the amount you and Miss Helm told me I would receive, therefore, I am willing to undertake the work of calling on all those for whom contracts can be located or whose names can be learned as having contracted to buy lots, get them to revive their contracts wherever possible, and make collections thereof, for the sum of Fifteen Hundred Dollars ($1500.00). If we find later that it is as good a proposition as you thought, and wish to give the additional $5500, I shall be glad to accept it of course, but it shall not or become a part of our agreement.

"If you wish to accept my offer as contained in the last above paragraph, a letter from you on or before May 20th, 1933, telling me to proceed with the work will be sufficient to constitute a contract between us on the basis of the said $1500."

The appellant likewise submitted in evidence appellee's answer of May 18th, which stated:

"I was greatly interested in your report of your work of last Saturday. It shows what I have always believed, that this Montrose is some-thing that can practically all be collected. It should encourage your client to make me the loan of $2500 so that attention could be given to this matter vigorously at once.

"I am very willing to pay you the $1500 you ask for your work and feel that the figure is perfectly fair. Please begin at once collecting the out-standing items and you may feel free to pay your client the $2500, if he will put it up, out of the money you collect after getting yours out."

This letter was signed "McNeill and McNeill, By R. H. McNeill", the appellee.

The testimony relied upon by the appellee differs sharply from the testimony presented by the appellant. In effect it is: That he was president of the Montrose Land Company, a corporation, during the times mentioned above; that he owned 25 per centum of that corporation and its note for $14,100 secured by second deed of trust upon the property; that appellant and Miss Helm desired to undertake the work of collecting monies due under unpaid purchase contracts covering lots sold by the corporation at Reading, Pennsylvania, and adjust and renew these contracts; that he employed appellant and Miss Helm, on a 20 per centum commission basis, to collect these unpaid balances which approximated $7,500; that on May 1, 1933 he delivered to them a list showing the amounts due from various purchasers, and to each of them a power of attorney executed by the corporation by him as president, which was the only power of attorney he ever delivered; that prior to May 15th appellant and Miss Helm had commenced their work; that he received appellant's letter dated May 15th and replied to it on May 18th; that at no time did he agree individually to pay appellant any sum for this work; that the sum of $1,500 referred to in his letter of May 18th to appellant signed by him individually was based on an estimate that this sum was 20 per centum of the total amount of $7,500 which was due the corporation; that appellant reported to him that she collected approximately $950 on the Montrose matter, but no part of this was turned over to the corporation, nor to him as its president.

Additional matters appearing of record are: An undated pencil memorandum prepared by appellant which purported to show that she and Miss Helm were acting for the corporation. The appellant at first denied it was in her handwriting, then taking the stand again, admitted that she wrote it. A letter testified to have been signed by the appellant and Miss Helm dated June 7, 1933, refers to the fact that they were working on the contract together and that their remuneration was to be 20 per centum of the sums collected. The appellant denied signing this letter.

Two handwriting experts were called by the appellee and testified that this paper together with other papers offered in evidence which appellant denied signing were signed by her. Several witnesses testified that appellant stated that she and Miss Helm were working on the Montrose matter on a commission basis, but these witnesses did not testify whether or not these statements were made prior to, or later than, May 18, 1933. Appellant was present when a contract was entered into between the corporation and Mr. Eckel for the sales campaign of 200 lots and that this contract provided that appellant and Miss Helm should have office space to enable them to meet persons under contract for the purchase of Montrose land heretofore sold them, and that Mr. Eckel was to make arrangements to carry the first trust until the termination of the contract which was for 90 days.

The court below assigned no reasons for withdrawing the case from the jury, nor were any reasons assigned by appellee's counsel when the request was made. From the briefs and the record, it would appear that the lower court concluded the contract of employment was made with the Montrose Land Company, a corporation, and, therefore, appellee was not bound in his individual capacity. This raises the questions of (1) whether appellant contracted with the corporation or appellee individually, and (2) whether appellee could be held individually liable on the contract, even though he was in fact president of the corporation and therefore its agent.

Briefly, the jury are the triers of the facts that are properly presented in the case. The issue of fact in this case (considering the strongest case made for the appellant) is whether or not appellant entered into the contract with the appellee in his individual capacity. From what has been said it is clear, we think, that there was evidence in the case, which, if believed by the jury, would have justified a verdict for appellant. In this view it was error on the part of the court to have given binding instructions.

In saying this we do not overlook appellee's contention that he was acting on behalf of the Montrose Land Company and that with such knowledge in her there could be no individual liability upon him; that where one acts for a disclosed principal there is no individual responsibility upon the agent. We do not so understand the rule of law as claimed by appellee. Though an agent is acting for a disclosed principal he may make himself personally liable thereon if he binds himself by definite words and stipulations. "One acting as a private agent may be bound, notwithstanding his known agency, upon contracts which he executes in his own name." U. S. Shipping Board Merchant Fleet Corp. v. Harwood, 281 U.S. 519, 524, 50 S.Ct. 372, 373, 74 L.Ed. 1011.

In Sadler v. Young, 78 N.J.L. 594, 75 A. 890, a case in which the factual situation is quite similar to the one at bar, the court said [page 891]: "The theory upon which the nonsuit was ordered seems to have been that the fact that the property which was the subject-matter of the contract was owned by the corporation of which the defendant was president, raised a conclusive presumption that the defendant, in signing the contract, acted, not for himself, but as the agent of the corporation, and that, having so acted, he was not personally bound by its provisions. This theory is altogether untenable. In the first place it does not follow, as a necessary inference, that because the land was owned by a corporation of which the defendant was president, he was acting as its agent in making the contract with the plaintiff. His official relation to the corporation was no bar to his right to make a personal contract with the plaintiff of the tenor of that sued upon; and it is quite possible that his financial interest in the corporation was of sufficient importance to induce him to do so. In the second place, even if it be assumed that in making the contract he acted as the agent of the corporation, he is not on that ground relieved from personal responsibility. The body of the contract provides that he, not the corporation, shall pay the commission, and it is signed by him personally, and not as the agent or representative of the corporation. Since the decision of Kean v. Davis, 20 N.J.Law [Spencer] 425, on error 21 N.J.Law [1 Zab.] 683, 47 Am.Dec. 182, the law has been settled in this state that an agent who contracts in such form as to make himself personally responsible cannot afterwards, whether his principal was, or was not, known at the time of the making of the contract, relieve himself from that responsibility."

See, also, Strauss & Co. v. Berman, 297 Pa. 432, 147 A. 85; Rankin v. Vest, Mo.

116

App.1929, 13 S.W.2d 1095; Gordon Malting Co. v. Bartels Brewing Company, 206 N.Y. 528, 100 N.E. 457, 461; American Alkali Co. v. Bean, C.C., 125 F. 823; Guernsey v. Cook, 117 Mass. 548; Cream City Glass Co. v. Friedlander, 84 Wis. 53, 54 N.W. 28, 21 L.R.A. 135, 36 Am.St.Rep. 895; Williston on Contracts, sec. 295, vol. 1, p. 866, Revised Ed. 1936.

While undertaking the work for which she was hired, appellant necessarily acted as the agent of the corporation, but that agency was merely a means whereby her employment would be consummated, and would not, in and of itself, supplant the theory under which the suit was brought, namely, that she entered into a personal contract with the appellee to perform certain services for which she would be compensated by appellee in his individual capacity. We see no incongruity in this relationship, nor anything which, as a matter of law, would abrogate such a contract. The record here presented, construed in its most favorable light for the appellant, unmistakably shows the monetary interest of appellee which well could have moved him to enter into such a personal contract. We are aware of no rule of law that prohibits an individual from binding himself personally in order to protect his investments in a corporation.

The issue in this case, whether or not the appellee did so bind himself, under the record construed most favorably to appellant, is one which should have remained with the jury for its determination.

The case is reversed and remanded for further proceedings not inconsistent herewith.