## BIRCHALL v. CAPITAL TRANSIT CO.
### No. 135.

Municipal Court of Appeals for the
District of Columbia.

Nov. 23, 1943.

I. H. Minovitz, of Washington, D.C., for appellant.

R. E. Lee Goff, of Washington, D.C., (Bowen & Kelly, of Washington, D.C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

Plaintiff sued for personal injuries sustained while a passenger in defendant's bus. On the plaintiff's case, the trial judge directed a verdict. She appeals and presents for review the single question as to the propriety of the peremptory instruction.

Briefly summarized, this was plaintiff's case: Defendant's bus was in the underpass at Scott Circle going south, and as it was emerging from the underpass was struck by a passenger automobile coming from the opposite direction. That automobile was apparently out of control; it had crossed from its own lane over to the southbound lane at a high rate of speed and struck the front of the bus on its right-hand side. Plaintiff testified that as the bus approached the underpass she felt it pick up speed and "lunge right into the tunnel." She estimated the speed at the time the bus entered the underpass at 35 miles per hour.

On cross-examination she testified that she did not know how fast the bus was going when it entered the underpass, but that she estimated the speed at about 35 miles an hour, because she had a distinct feeling of an increase of speed whenever she rode through that underpass.

Another passenger also estimated the speed of the bus at 35 miles per hour as it entered the underpass. On cross-examination he admitted that he did not operate an automobile and did not know how many miles an hour buses go; that as the bus entered the underpass into the tunnel, he always had a feeling that it was traveling faster than it really was, because it was going down a steep grade and through a tunnel; "that it felt to him as though the bus increased its speed to 35 miles per hour as it went down the slope and into the tunnel."

Still another passenger testified that he did not notice the speed of the bus as it proceeded down the street; that it increased its speed as it entered the underpass; that as it entered the underpass the operator started to work with his change box and was "doing something" with his right hand, and had his head turned slightly to the right; that at that time, about 125 feet away, he saw an automobile swerving from the northbound lane into the southbound lane coming toward the bus at a high rate of speed, at an oblique angle; that from the time witness first saw the other car until the collision happened he did not see the bus operator do anything except just at the moment of impact; and that the bus operator turned his head toward the other car just about the time of the impact. On cross-examination this witness

admitted that because of the acoustics in the tunnel, vehicular speed seemed to be faster than it really was. He also admitted that he had a claim against the transit company for his own injuries, and that in a written statement to the company he had said nothing about the operator not looking ahead or about the fast rate of speed of the bus. He explained that he had not mentioned those facts in his statement because he was not asked about them.

A police officer detailed to the Accident Prevention Unit, who arrived soon after the collision, described the layout of the scene, identified certain photographs which became exhibits in the case and are in the record before us; he produced the official precinct book containing his incidental report, including a notation, "Bus was driven carelessly."

It was upon this showing that the case was taken from the jury on defendant's motion.

■ The rule by which evidence is tested on a motion for an instructed verdict has many times been declared in this jurisdiction. It was recently summarized in Galt v. Phoenix Indemnity Co., 74 App.D. C. 156, 120 F.2d 723, 724. Justice Miller, speaking for the court, said: "The question which we must decide is whether the case was properly taken from the jury. The rule governing this question is that the motion to direct a verdict admitted every fact in evidence which tended to sustain appellant's case, together with every inference reasonably deducible therefrom; and that if there was any evidence from which the jury could reasonably have found for the appellant, upon proper instructions of law, the order directing a verdict was improper."

That statement is in complete accord with many earlier cases.[1] This court has had occasion to adopt the same rule.[2]

From our study of the record we hold that plaintiff had made out a prima facie case—one which required answering evidence—and which must be regarded as sufficient to overcome the hurdle of a motion for a directed verdict.

■ Out of special solicitude for the safety of human cargo has grown the rule that a common carrier must exercise the highest degree of care in transporting passengers for hire.[3] This means that proof of even slight negligence creates liability on its part.[4]

■ Applying this rule, we think the conclusion inescapable that the case should not have been taken from the jury. Here was the testimony of plaintiff and another witness fixing the bus' speed at 35 miles an hour; the testimony of a third witness that the operator had averted his gaze and was driving with only one hand on the steering wheel; the testimony of the same witness that he saw the other automobile when it was 125 feet away and that the bus operator either did not see it until practically the moment of the impact, or if he did see it, did nothing about it. All this evidence taken together, as it must be, in a light most favorable to plaintiff, and with every reasonable inference in her favor, certainly spells out a situation from which the jury might have found at least slight negligence. We do not overlook the fact that on cross-examination some of this evidence was somewhat shaded or modified, or that some element of doubt was created, but that has to do with its weight, and not its legal sufficiency.

There seems little doubt that the other

[1] Adams v. Washington & G. R. Co., 9 App.D.C. 26; Barbour v. Moore, 10 App. D.C. 30; Washington & G. R. Co. v. Grant, 11 App.D.C. 107; Jennings v. Philadelphia, B. & W. R. Co., 29 App.D.C. 219, 10 Ann.Cas. 761; Barstow v. Capital Traction Co., 29 App.D.C. 362; Shinn v. Evans, 37 App.D.C. 304; Chalvet v. Huston, 43 App.D.C. 77, Ann.Cas.1916C, 1180; Washington R. & E. Co. v. Buscher, 54 App.D.C. 353, 298 F. 675; Carusi v. Schulmerick, 69 App.D.C. 76, 98 F.2d 605; Walford v. McNeill, 69 App.D.C. 247, 100 F.2d 112; Boaze v. Windridge & Handy, 70 App.D.C. 24, 102 F.2d 628; Hellweg v. Chesapeake & P. Tel. Co., 71 App.D.C. 346, 110 F.2d 546; Christie v. Callahan, 75 U.S.App.D.C. 133, 124 F.2d 825.

[2] Viner v. Freedman, D.C.Mun.App., 33 A.2d 631; Lohse v. Coffey, D.C.Mun.App., 32 A.2d 258; Washington Nat. Ins. Co. v. Stanton, D.C.Mun.App., 31 A.2d 680.

[3] Dixon v. Great Falls & O. D. R. Co., 38 App.D.C. 591; Pistorio v. Washington R. & E. Co., 46 App.D.C. 479; Capital Traction Co. v. Copland, 47 App.D.C. 152.

[4] Ramjak v. Austro-American S. S. Co., 5 Cir., 186 F. 417; Chicago, etc., R. Co. v. Byrum, 153 Ill. 131, 38 N.E. 578; Bischoff v. People's Ry. Co., 121 Mo. 216, 25 S.W. 908; Pershing v. Chicago, etc., Ry. Co., 71 Iowa 561, 32 N.W. 488; Louisville, etc., R. Co. v. Ritter's Adm'r, 85 Ky. 368, 3 S.W. 591.

vehicle involved in this collision was driven with gross negligence. From the evidence, the jury might have found that plaintiff's damage resulted entirely from the negligence of the other driver. But it may, on the other hand, have found that the bus operator was guilty of negligence in one of the particulars we have described, and that such negligence was a contributing cause of plaintiff's injury. These were questions for the jury, and not for the court.

Reversed and remanded, with instructions to award a new trial.

Reversed.