### CARUSI et al. v. SCHULMERICK. *
#### No. 6995.

United States Court of Appeals for
the District of Columbia.

Argued April 5, 1938.

Decided June 13, 1938.

Rehearing Denied July 27, 1938.

Henry I. Quinn and William T. Hannan, both of Washington, D. C., for appellants.

Howard W. Vesey, Donald C. Beelar, Alvin L. Newmyer and David G. Bress, all of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and STEPHENS and MILLER, Associate Justices.

GRONER, C. J.

Alma Schulmerick, appellee (whom we shall call plaintiff), brought this action against Carusi and Moebs, appellants (whom we shall call defendants), as owners of an apartment building in Washington city to recover damages for personal injury sustained by her when a window in the apartment which she leased from defendants fell upon her hand. In her declaration she charged that defendants, with knowledge and notice of the defective and unsafe condition of the window, failed, prior to her occupancy of the apartment, to repair it or to notify her of its unsafe condition, and that she was herself unable upon reasonable inspection to observe the unsafe condition and was in fact unaware of the danger until after her injury. The case was tried to a jury. At the conclusion of plaintiff's evidence and again at the conclusion of all the evidence defendants moved for a directed verdict, which was denied, and the jury found in favor

*Writ of certiorari denied 59 S.Ct. 148, 83 L.Ed. ——.

of the plaintiff. No exceptions were taken to the court's charge to the jury, and the whole question here is,—Should the trial court have directed a verdict for defendants?

On this appeal counsel for defendants insist that the trial court erred in holding as a matter of law that there was sufficient evidence to go to the jury tending to show, 1st, any condition of the window involving unreasonable risk of bodily harm; 2nd, knowledge and concealment on the part of defendants of the dangerous condition; 3rd, lack of knowledge thereof on the part of plaintiff after reasonable inspection or examination.

In September 1934 plaintiff was attracted by a rental sign on defendants' apartment house and, after inspection of apartment 61, she agreed to make a lease for one year. When plaintiff selected the apartment she was told by the resident manager that it would be cleaned and repaired and put in first-class condition. A certain amount of repairing and refurbishing was in fact done. The west window of the apartment was a steel counter-balanced window consisting of two steel sashes, each weighing about 100 pounds. At the beginning of occupancy this window was open an equal distance at the top and at the bottom and remained so until October 14th. The weather then had turned cold, and plaintiff tried to close the window but was unable to do so; and a few minutes later, as she was looking out the window, with her hand resting on the sill, the window suddenly fell and caused serious and permanent injury. The window fell because the hooks securing the chains on which the window worked "opened up", throwing the chains off the pulleys and causing both the inner and outer sash to drop.

At the conclusion of all the evidence the trial judge charged the jury that under the general law the lessor of an apartment is not liable for bodily harm caused to a lessee by a dangerous condition existing when the lessee took possession, or which arose thereafter; that in the absence of express warranty the tenant takes the premises as they are at the time of the lease; and that it is the duty of the tenant to make such examination as is necessary to ascertain whether or not the premises are in safe condition. The court, however, told the jury that an exception to the rule exists where the lessor conceals or fails to disclose to his lessee any known unnatural or artificial condition involving unreasonable risk of bodily harm to the lessee. In that case the lessor will be liable for injuries sustained, the court said, where the lessee does not know the condition or risk involved and the lessor has no reason to believe that the lessee will discover the condition or realize the risk. Continuing, the judge said:

"In this particular case, as I have pointed out, the lessors were the owners and Miss Schulmerick the lessee. You will see that there are three elements that are necessary to make out liability under this heading. Applying what I have told you about the burden of proof and preponderance of the evidence, the burden is upon Miss Schulmerick to establish each one of these elements by a fair preponderance of the evidence:

"Now, first, there must be upon the land which is the subject of the lease a condition involving unreasonable risk of bodily harm to the persons on the land. The land in this case is this small apartment 61. So, in order to succeed, the plaintiff must first show to you that there was a condition in that apartment which involved an unreasonable risk to the tenant. In order to meet this condition it will be necessary for you to find that at the time the lease was signed the condition of the west window in apartment 61 was such as to involve unreasonable risk of bodily harm to the tenant in the use of that apartment.

"The second element is that the lessee did not know of the dangerous condition or the risk involved therein. This means that the plaintiff must show by the fair preponderance of the evidence that she did not know of the dangerous condition said to have existed, or, if she did know of that condition, she did not know that there was any risk which grew out of it.

"Now, the third element is, it must be shown by the plaintiff that the lessors [knew] of this dangerous condition and [had] reason to believe that the lessee [would] not discover the condition or realize the risk."

■ Both plaintiff and defendants accepted the court's charge as a correct statement of the law, as we think it was. We have said in several cases that in a lease of this character there is no implied warranty by the landlord that the house is safe. But we have also said that where the landlord has knowledge of defects

which are hidden it is his duty to reveal them. Lawler v. Capital City Life Insurance Co., 62 App.D.C. 391, 68 F.2d 438; Howell v. Schneider, 24 App.D.C. 532, 548. See also Restatement of the Law of Torts, Section 358. And this brings us to an examination of the evidence in order to determine whether it was sufficient to require submission of the case to the jury.

When plaintiff first applied for a lease the apartment was vacant, and it was recognized by both plaintiff and defendants that it would have to be put in condition, and that this involved cleaning and painting and the making of such repairs as were necessary to that end. Plaintiff was assured by the resident manager that all this would be done. The window sashes and the window were painted, as part of the reconditioning of the apartment, and for some reason the window had been left open at top and bottom. When plaintiff for the first time, on October 14th, attempted to close the window she found that it was held fast in the frame,—because, as was later shown, of the fresh paint. When after her injury she returned to the apartment from the hospital, she found both of the window chains out of the pulleys and grooves and hanging loose. The witness Darcey, who was employed by defendants to repair the damage, testified that the window was of the counter-balanced type, that is to say, the inner and outer sashes, instead of being balanced independently by weights, as in the ordinary window, are balanced by each other, by means of chains secured to the top of each sash and run over pulleys. Thus as the inner sash is raised the outer sash is lowered, and vice versa. Darcey testified that he found the inner sash all the way down and the outer sash not quite all the way down. He concluded that the recent painting had made the window bind and that with this condition present an attempt to raise the inner sash would cause the chain to become slack (because the outer sash would not lower) and that when the inner sash was released it would drop and take up the slack with a jerk, which would cause the chains, or the hooks which secured them, to be strained or broken. He also testified that if there is proper clearance the paint will not have the effect of binding the sash but that if the paint is thick, there being no clearance, the window will bind.

Another witness, who was introduced as an expert, testified that when one of the sashes is moved and the other sticks, the chains are likely to come off the hooks which secure them to the sashes, thus leaving no further support for either sash; and that if the chain on one side becomes unhooked the entire weight of both sashes is placed on the remaining chain, and if that chain or the hook securing it is not of sufficient strength to bear the weight of both sashes they will fall to the sill.

Howard Cannon, another witness, had been janitor in the apartment building from 1931 until February 1934. As janitor it was his duty to do all the repair work in the several apartments and to report to the owners or their agent any repairs which could not be made by him. He testified that he was familiar with the steel windows which were on the west side of the building and that when the windows were painted it caused them to stick; that all the windows of this character were hard to open and a former tenant of the apartment occupied by plaintiff always called him when she wanted to open or close the window in question. He testified that the effect of the paint would be to cause one sash of the window to stick and when this happened and the other sash was moved, the chains would either buckle and come off the hooks or the free sash would plunge down, damaging or breaking the hooks. He stated that he had no knowledge of the breaking of the chains or hooks of the window in the apartment rented by the plaintiff, but that chains and hooks in the same character of window in the other apartments had broken. He further stated that during his term of service it was "his job" to tell the tenants to be careful with the windows and to call him and have him open the windows whenever necessary.

Zeno Dewel, who succeeded Cannon as janitor and who was on duty at the time of the accident, testified that he participated in preparing the apartment for plaintiff's occupancy and that he washed the windows and opened and closed them and had no trouble except that they "stuck" a little from the paint; that he had taken a long screwdriver and loosened them at the top "where the paint stuck" and put machine oil there so that they would move more easily. He denied that he had any general knowledge of the windows falling, except that he knew that the chains had come off a similar window at apartment 42, and also testified that

he had had complaints from tenants of other apartments in the building that the same sort of windows were sticking and could not be moved.

Mr. Grier, a representative of the agent of defendants up to a comparatively short time before the plaintiff's lease, testified that he had employed Cannon and that it was Cannon's duty to do whatever work was necessary in respect to the windows; that Cannon had called his attention to the fact that the windows would stick sometimes and that in such case he would instruct Cannon to fix the windows; that he had himself gone to examine the steel windows, but he never made any regular inspection but left that to the janitor and to the resident manager.

Montgomery, the rental agent at the time of the injury, testified that in causing plaintiff's apartment to be put in condition for occupancy he inspected it but did not examine the windows, nor did he have anyone examine them for him, and did nothing with respect to them except to have them painted; that "he left everything with respect to the windows and the condition of the windows to the janitor and resident manager".

What is related above is a condensed narrative of the testimony of the witnesses as to the condition of the window at the time the lease was made and at the time of the accident, and we think it was enough to show that the window was in a defective condition when the apartment was turned over to the plaintiff and that defendants knew of this condition. There was evidence also to show that plaintiff did not know of the dangerous condition of this window or of the more or less inherently dangerous nature of windows of this type and that she could not have known of it from reasonable inspection. The testimony of the two expert window men tended to show that a window constructed in the unusual way in which this one was and of its unusual weight was dangerous in case it fell and that, like any other window, it was likely to stick when paint was applied to the sash and frame, and that when this occurred and an effort was made to open or close the window, a strain would be produced on the chains, which if not relieved would either break them or open the hooks securing them and cause the window to fall. The evidence of the two janitors tended to show that this condition was known to the owners of the building, both from the happening of accidents to other similar windows and from complaints of tenants "when the windows stuck", and that the agent who managed the property until a few months before the injury had, on occasions as the result of complaints, examined the steel windows but had done nothing more than impose the duty of keeping them in good condition on the janitor and the resident manager.

On the evidence as we have stated it, the case may fairly be said to be close but, considered in connection with the rule on a motion for a directed verdict, we think the evidence was sufficient to take the case to the jury, for "in determining a motion of either party for a peremptory instruction, the court assumes that the evidence for the opposing party proves all that it reasonably may be found sufficient to establish, and that from such facts there should be drawn in favor of the latter all the inferences that fairly are deducible from them". Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720. Under this rule if the evidence, and the reasonable inferences deducible from it, are sufficient to justify a finding that the defendants knew of the condition of the window and realized the risk involved in its use and failed to notify the tenant, and that the latter did not know of the condition and could not have ascertained it by a reasonable inspection, the motion for binding instructions was properly denied. On the whole case we are of opinion that the evidence measures up to the required standard.

Affirmed.