Hazel G. SLABE, Appellant,

v.

Pauline V. BEYER, Appellee.

No. 2315.

Municipal Court of Appeals for the District of Columbia.

Argued Jan. 19, 1959.

Decided March 31, 1959.

James L. Morrisson, Washington, D. C., with whom Joseph M. Del Nero, Washington, D. C., was on the brief, for appellant.

Walter J. Murphy, Jr., Washington, D. C., with whom H. Mason Welch, J. Harry Welch, J. Joseph Barse, and Arthur V. Butler, Washington, D. C., were on the brief, for appellee.

Before ROVER, Chief Judge, and HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant became a tenant in an apartment house owned by appellee in August 1956. Some six months later, she was rais-

ing a venetian blind in one of the rooms in her apartment when the entire blind assembly fell from its supporting brackets and struck her on the head, neck and back. She brought this action against appellee seeking damages for her injuries on the theory, as stated in her brief, that prior to the execution of the lease, appellee knew of, but failed to disclose to her, certain latent defects in the venetian blind assembly which were the cause of its fall. The case was tried to a jury and at the close of appellant's evidence, the court directed a verdict in appellee's favor. The only question presented on this appeal is the correctness of this ruling.

Appellant's evidence indicated that the blind in question was on the window when she originally moved into the apartment; that it appeared to be in good order at that time and she was not told otherwise; that no work other than cleaning was performed on the blind during the following six months until the accident; and that she had no knowledge of any defects in it. Her evidence also tended to show that the installation of the blind had been faulty; that the brackets supporting it were reversed and upside down; that the screws attaching the brackets to the window frame had loosened; and that there was a play or space between the blind assembly and its supporting bracket on the side having the cord used to raise the blind. An expert witness, on the basis of these facts, testified that "[w]hen the screws in the blind became loosened it permitted the bracket to slip and the blind to fall."

There was no evidence to show who had originally installed the blind, or that appellee had performed any work on it prior to the execution of the lease. However, there was evidence that there had been complaints about venetian blinds by tenants in other apartments in the same building, although the nature of the complaints and the dates on which they were made were not disclosed. The building's janitor testi-

fied that he did general maintenance work and that he had performed repairs on other blinds in other apartments, which consisted of replacing cords and tightening brackets, and that he had repaired the blinds in the apartments directly above and below appellant's apartment. Again, there was no indication as to when these repairs were made. There was no evidence that any other blind had actually fallen.

■ In Hariston v. Washington Housing Corporation, D.C.Mun.App.1946, 45 A. 2d 287, this court summarized the law in this jurisdiction governing the liability of the landlord for injuries sustained by the tenant because of a defect in the portion of the premises under the tenant's control as follows:

"* * * generally, in the leasing of a house there is no implied warranty by the lessor that the structure is safe or well-built or reasonably fit for the occupancy intended. Therefore in the absence of an express agreement by the lessor to repair, or a fraudulent misrepresentation as to the condition of the premises, or deceit or concealment by the landlord, the tenant takes the risk of safe occupancy, and takes the property as he finds it, 'under the gracious protection of caveat emptor.' "[1]

In an attempt to bring her suit within this rule, appellant, as we have said, alleged that appellee had concealed or failed to disclose the defects in the blind at the time when the lease was executed. Accordingly, it was necessary for her to show that appellee had knowledge of the defects at that time. We believe that appellant's proof was insufficient on this point and thus that a verdict was properly directed against her claim.

■ It is apparent that there was no direct proof that appellee had actual knowledge of the defect. Neither was there any evidence that appellee or her agents had either negligently installed or repaired the blind, from which the jury might have in-

1. 45 A.2d at pages 287–288.

ferred knowledge. Nor do we think it can be inferred that appellee had knowledge of the defects in the blind in question because of the complaints about blinds in other apartments and the repairs made in those cases. Apart from the fact that there is nothing in the record to indicate that all or any of those complaints and repairs occurred prior to the beginning of appellant's tenancy, we simply do not believe that the inference which appellant argues for can be reasonably drawn in this case. The evidence relating to the complaints made by other tenants about other blinds is of no help, for we are not informed as to what was wrong in those cases, or whether those defects were similar to the defects which caused appellant's injuries. As for the repairs, we know neither the number of blinds worked upon or the total number of blinds in the building. There is definite evidence in only two cases, the apartments above and below appellant's. Generally, evidence of defects in a relatively small number of instances, standing alone, is not sufficient to impute knowledge that defects exist in every case or in a particular case.[2]

If there had been something more pointing specifically to appellant's blind as having these defects, or if appellant could have shown a more consistent pattern occurring in the defects in the other blinds, and that the defects in her blind fitted into that pattern, such as existed in Carusi v. Schulmerick, 69 App.D.C. 76, 98 F.2d 605, certiorari denied, 1938, 305 U.S. 645, 59 S.Ct. 148, 83 L.Ed. 417, the case on which appellant places so much reliance, the inference of knowledge might be justified. Here, however, there was no evidence of any danger connected with appellant's blind in particular, prior to the commencement of her tenancy. Further, it appears that the repairs made on the other blinds were only to remedy worn cords and loose screws. The defects alleged to have caused appellant's injuries were faulty installation, reversed, upside-down brackets, play between the blind

ends and the brackets, and loose screws. The pattern, then, if one could be said to have been established by the repairs, showed at most that appellee "knew" that blinds were "wearing out," not that all of them were displaying signs of the more fundamental defects on which appellant based her case.

Affirmed.

2. Cf. Ray v. United States, 5 Cir., 1955, 228 F.2d 574, 580–581, certiorari denied, 1956, 351 U.S. 968, 76 S.Ct. 1034, 100 L.Ed. 1487.